## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.                      Case No. 5:26-cv-00213-AGM-PRL

ACCENTURE LLP; META PLATFORMS, INC.;
TASKUS, INC.; GENPACT LIMITED.;
DEVIN S. ANDERSON; and CHRISTOPHER W. KEEGAN,

    *Defendants.*

### FIRST AMENDED COMPLAINT FOR DAMAGES

### DEMAND FOR JURY TRIAL

### INTRODUCTION

1.    This action challenges Defendants' unexamined invocation of child-safety enforcement laws to permanently foreclose Plaintiff's participation in digital commerce, and the subsequent infliction of severe emotional distress through federal court filings associating Plaintiff, a CSA survivor, with child sexual exploitation.

2.    Meta and the Vendor Defendants branded Plaintiff under a child sexual exploitation enforcement category without identifying any content, then

continued his exclusion while restoring others flagged under the same enforcement family—including one user whose content Meta confirmed constituted a CSE violation.

3. The original complaint filed in the Northern District of California disclosed that Plaintiff is a CSA survivor. Accenture, one of the Vendor Defendants that participated in the originating enforcement, reviewed that complaint and then published on a public federal docket the assertion that "an alternative explanation for Accenture's recommendation—a legitimate community standards violation by Ballentine—is consistent with the facts alleged in the complaint" without identifying any content, any standard, or any factual basis—while repeatedly placing Plaintiff's name in close proximity to child sexual exploitation terminology. Accenture's counsel acknowledged in writing that no CSE violation occurred. Neither the assertion nor the pairings have been withdrawn.

4. After Plaintiff filed a related action naming the responsible individual, a partner at Accenture's counsel twice forced continued contact between Plaintiff and that individual after Plaintiff removed him from the email chain and stated in writing that he would not communicate with any named defendant.

5. Then, on the same day Plaintiff offered to pause all pending litigation, Accenture republished the defamatory assertions into a new federal proceeding in this District. When asked to correct the record after the procedural justification dissolved, Accenture refused.

6.    Plaintiff operated a mobile RV repair business in Florida, sourcing 100% of his customers through Facebook. On July 4, 2022, Meta permanently disabled Plaintiff's account under its Child Sexual Exploitation policy. Meta did not identify any content that violated the policy. It has never identified any such content.

7.    Meta publicly represents that it reports "all apparent" CSE content to the National Center for Missing and Exploited Children. Meta did not report Plaintiff. No law enforcement agency has contacted Plaintiff in over three years. Either Meta identified an apparent violation and did not report it, or Meta applied its CSE enforcement category where no apparent violation existed.

8.    Enforcement was carried out through a joint pipeline operated by Meta and Vendor Defendants Accenture LLP, TaskUs, Inc., and Genpact Limited A Vendor Defendant reviewer affirmed the CSE designation after Plaintiff submitted his U.S. passport for identity verification.

9.    This action seeks damages in an amount not less than $250,000,000.

**JURISDICTION AND VENUE**

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Complete diversity of citizenship existed between Plaintiff and all Defendants at the time of removal. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. Plaintiff seeks $250,000,000 in compensatory damages.

11.    Plaintiff is a citizen of Florida, domiciled in Clermont, Lake County, Florida.

12.    Defendant Meta Platforms, Inc. is a citizen of Delaware and California. Meta is incorporated in Delaware with its principal place of business in Menlo Park, California.

13.    Defendant Accenture LLP is a citizen of Illinois and Delaware. Accenture LLP is an Illinois limited liability partnership with two partners: Accenture Inc., a Delaware corporation with its principal place of business in Illinois; and Accenture LLC, a Delaware limited liability company wholly owned by Accenture Sub, Inc., a Delaware corporation with its principal place of business in Illinois.

14.    Defendant TaskUs, Inc. is a citizen of Delaware and Texas. TaskUs is incorporated in Delaware with its principal place of business in Texas.

15.    Defendant Genpact Limited is a citizen of Bermuda and New York. Genpact Limited is a Bermuda corporation with its principal place of business in New York.

16.    Defendant Devin S. Anderson is a citizen of Utah, domiciled in Utah.

17.    Defendant Christopher W. Keegan is a citizen of California, domiciled in California.

18.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2). This is the district where the state court action was pending at the time of removal. A substantial part of the events giving rise to the claims occurred in this District.

4

19. This Court has personal jurisdiction over Defendant Meta. Meta transacts business in Florida and caused tortious injury in Florida through the conduct alleged in this Complaint.

20. This Court has personal jurisdiction over Defendant Accenture. Accenture transacts business in Florida through its content-moderation services affecting Florida users and caused tortious injury in Florida through the conduct alleged in this Complaint.

21. This Court has personal jurisdiction over Defendant TaskUs. TaskUs transacts business in Florida through its content-moderation services affecting Florida users and caused tortious injury in Florida through the conduct alleged in this Complaint.

22. This Court has personal jurisdiction over Defendant Genpact. Genpact transacts business in Florida through its content-moderation services affecting Florida users and caused tortious injury in Florida through the conduct alleged in this Complaint.

23. This Court has personal jurisdiction over Defendant Anderson. Anderson caused tortious injury in Florida by publishing defamatory statements on a public federal docket that were accessed in Florida and caused reputational and emotional harm to Plaintiff in Florida.

24. This Court has personal jurisdiction over Defendant Keegan. Keegan purposefully directed communications to Plaintiff in Florida that caused additional emotional harm to Plaintiff in Florida.

## PARTIES

### A.    Plaintiff

25.    Plaintiff Marvelle J. "Jay" Ballentine is an individual who operated a mobile RV repair business in Florida, domiciled in Clermont, Lake County, Florida.

26.    Plaintiff brings this action in his individual capacity. He does not seek to represent, certify, or recover for any class. The remedies requested are tailored to redress Plaintiff's own injuries.

### B.    Defendants

27.    Defendant Meta Platforms, Inc. ("Meta") is a Delaware corporation with its principal place of business at 1 Hacker Way, Menlo Park, California 94025.

28.    Defendant Accenture LLP ("Accenture") is a limited liability partnership organized under the laws of Illinois.

29.    Defendant TaskUs, Inc. ("TaskUs") is a Delaware corporation with its principal place of business in Texas.

30.    Defendant Genpact Limited ("Genpact") is a Bermuda corporation with its principal place of business in New York.

31.    Defendant Devin S. Anderson ("Anderson") is an individual domiciled in Utah. Anderson is a partner at Kirkland & Ellis LLP and served as counsel of record for Accenture in the Northern District of California action captioned Ballentine v. Meta Platforms, Inc., et al., Case No. 3:25-cv-07671-CRB (the

6

"Federal Action"). Anderson signed the First Motion and the Second Motion on behalf of Accenture.

32. Defendant Christopher W. Keegan ("Keegan") is an individual domiciled in California. Keegan is a partner at Kirkland & Ellis LLP and served as counsel of record for Accenture in the Federal Action. Keegan appeared on the docket in the Federal Action on September 26, 2025.

### C.    Defined Terms

33. Accenture LLP, TaskUs, Inc., and Genpact Limited are referred to collectively as the "Vendor Defendants."

34. Anderson and Keegan are referred to collectively as the "Litigation Defendants." All six named defendants are referred to collectively as "Defendants."

## FACTS

### A.    Plaintiff's Business and Platform Dependence

35. Plaintiff enrolled in the National RV Training Academy ("NRVTA"). NRVTA certification provided contractual rights to continuing education through the NRVTA Alumni Facebook Group.

36. Plaintiff invested approximately $20,000 in specialized RV repair equipment, training, and Meta advertising, while relying on Facebook's marketing and networking capabilities. At the time of his account termination, Plaintiff sourced 100% of his clients and leads from RV-related Facebook Groups and Facebook advertising. Before termination, Plaintiff had completed over $2,000 in

7

customer transactions through Facebook-sourced leads and had pending service requests valued at another $3,000.

## B.    The Enforcement Pipeline

37.    Meta and the Vendor Defendants maintained a business arrangement for platform policy enforcement services.

38.    Meta and the Vendor Defendants operated a joint platform policy enforcement pipeline in which Meta established policy enforcement guidelines, the Vendor Defendants staffed human reviewers for final policy enforcement decisions including routing, and Meta retained override authority.

39.    Meta and Accenture have maintained a business arrangement since 2012. Public reporting valued this relationship at approximately $500 million for Accenture's performance and delivery of platform policy enforcement services in 2021. Public reporting characterized Accenture as Facebook's largest partner in platform enforcement.

40.    Meta relies on the Vendor Defendants to meet its child-safety reporting obligations under 18 U.S.C. § 2258A.

41.    Vendor Defendant personnel performing final-review enforcement had access to account-level identifiers, including profile photos, names, and in some cases government-issued ID images.

42.    Following affirmation of the CSE designation, the reviewing Vendor Defendant executed the operational decision that determined whether Plaintiff's case would: (a) enter the NCMEC reporting workflow triggering mandatory law

8

enforcement notification under 18 U.S.C. § 2258A; or (b) bypass law enforcement entirely through an alternative workflow. This routing decision placed the reviewing Vendor Defendant at the chokepoint between platform enforcement and criminal investigation.

43.    Alternative identification under Fed. R. Civ. P. 8(d)(2). The identity of the specific Vendor Defendant who conducted Plaintiff's July 4–5, 2022 final review is within Defendants' exclusive possession; accordingly, Plaintiff pleads in the alternative that Accenture LLP, TaskUs, Inc., or Genpact Limited performed the review that affirmed the CSE invocation, with precise identification to be confirmed from review-session telemetry, queue-assignment records, and tool-access logs.

## C.    CSE Designation and Non-Report

44.    In 2022, Meta actioned approximately 105.9 million items under its "Child Sexual Exploitation" (CSE) enforcement category across Facebook and Instagram.

45.    That same year, Meta submitted approximately 26 million CyberTipline reports to the National Center for Missing and Exploited Children (NCMEC) pursuant to 18 U.S.C. § 2258A. No alternative reporting mechanism exists under federal law.

46.    The difference between the 105.9 million CSE-labeled enforcement actions and the approximately 26 million NCMEC reports reflects nearly 80

9

million CSE-labeled actions that were not referred to NCMEC. Section 2258A leaves "apparent violation" determinations to the provider's discretion.

47. Meta's public disclosure states: "Electronic Service Providers (ESPs) are legally obligated to report apparent violations of laws related to child sexual abuse material (CSAM) they become aware of to NCMEC's CyberTipline." Meta's CSE enforcement policy states it removes content that "sexually exploits children" and "report[s] apparent child exploitation to the National Center for Missing and Exploited Children (NCMEC)."

48. Section 2258A requires reporting "as soon as reasonably possible after obtaining actual knowledge of any facts or circumstances from which there is an apparent violation" of child exploitation laws. Meta retained discretion over which CSE-labeled enforcement actions resulted in permanent account terminations, which were referred to law enforcement, and which were restored.

49. For the approximately 80 million CSE enforcement actions Meta did not report to NCMEC in 2022: (a) Meta identified apparent violations of child exploitation laws in these actions but did not report them to NCMEC; or (b) Meta applied its CSE enforcement category to these actions despite identifying no apparent violations of child exploitation laws.

50. Meta's transparency reports show CSE enforcement actions declined from 30.1 million in Q3 2022 to 4.6 million in Q1 2025, a reduction of approximately 85%.

51.    Meta's Transparency Center states the company does not offer appeals for violations with "extreme safety concerns, such as child exploitation imagery." Meta's strikes policy provides that accounts "may be disabled after one occurrence" for severe violations including child sexual exploitation.

52.    Meta reversed 993,400 CSE enforcement actions on Facebook in 2022. Of these reversals, 985,300 occurred without user initiated reviews and 8,100 occurred following final human review through the Defendants' joint policy enforcement framework.

53.    On January 31, 2024, Meta CEO Mark Zuckerberg testified before Congress that Meta reports "all apparent" CSE content to NCMEC. This representation was reiterated in Meta's April 19, 2024 submission to the Senate Judiciary Committee.

### D.    The July 4, 2022 Enforcement Event

54.    On July 4, 2022, Meta invoked its CSE policy against Plaintiff and requested identity verification as a precondition to final human review. Plaintiff submitted his U.S. passport. The reviewer had Plaintiff's government-issued identification and profile photograph visible during review and was authorized to validate or invalidate Meta's invocation of its Child Sexual Exploitation (CSE) policy.

55.    Within hours of receiving Plaintiff's identification, Meta ratified the permanent termination and routed the matter through a workflow that did not result in a report to the National Center for Missing and Exploited Children.

11

56. The July 4, 2022 termination eliminated Plaintiff's access to all customer communications, pending appointments, contact information, advertising campaign data, and access to the NRVTA alumni group for continuing education. Plaintiff registered for a new Facebook account in April 2023 in order to access continuing education through the NRVTA Alumni Facebook Group. Meta promptly terminated the new account before Plaintiff could publish any content.

### E.     Comparators

57. Meta's strikes policy allows account disablement after one occurrence for CSE violations. Meta reversed CSE enforcement actions for other users, as set forth in Section C. Despite this demonstrated discretion, more than three years have elapsed without Meta returning Plaintiff's business data or restoring his right to make and modify contracts.

58. From 2020 to 2025, multiple users were enforced within Meta's sexual-content and Child Sexual Exploitation enforcement family. Each matter proceeded through Meta's enforcement apparatus, including vendor-staffed review queues, to human review, including final decisions.

**Comparator Matrix**

| Name | Race | Type | Violation | Reinstated |
|---|---|---|---|---|
| Marvelle J. Ballentine | Black | Business Owner | NON-EXISTENT | No |
| Steven Ertelt | White | Organization/Business Page | CSE flag (medical C-section video) | Yes |

| COMP-1 | White | Individual | Confirmed CSE | Yes |
|---|---|---|---|---|
| Abby Covington | White | Individual (Adoption Page) | Human Exploitation | Yes |
| @slut.social | White | Content Creator | Sexual Content/Adult Nudity/Solicitation | Yes |
| Betty Tompkins | White | Artist (Commercial) | Nudity/Sexual Content (artistic) | Yes |

59.    Steven Ertelt's account was flagged under the CSE policy for a medical C-section video. Meta restored Steven Ertelt's account after receiving a reinstatement demand from his counsel. On April 22, 2025, Plaintiff submitted a formal reinstatement demand to Meta which Meta constructively denied.

60.    COMP-1 posted content that Meta subsequently confirmed constituted a CSE violation. COMP-1 received a temporary suspension and was reinstated after Meta's CSE confirmation. Meta's own review stated: "We confirmed that it does not follow our Community Standards on child sexual exploitation." Yet Meta imposed only a temporary suspension on COMP-1's account. COMP-1's restoration after Meta-confirmed CSE policy violation demonstrates discretion over sanctions and restoration.

61.    Abby Covington, @slut.social, and Betty Tompkins were each enforced under Meta's broader content-policy enforcement family and each was reinstated.

13

62. Plaintiff's contractual relationship with Meta has not been restored. Plaintiff's access to the contractual rights conferred to him by NRVTA remains severed. Plaintiff's property remains withheld.

**F.    Post-Enforcement History**

63. As of the date of this filing, no federal, state, or local law enforcement agency has contacted Plaintiff regarding the July 4, 2022 enforcement matter. Defendants have not confirmed the existence or nonexistence of a NCMEC CyberTipline report for the enforcement matter. Defendants continue to withhold Plaintiff's account-resident business data.

**G.    Procedural History of Related Actions**

64. On September 9, 2025, Plaintiff filed a civil action in the United States District Court for the Northern District of California, captioned Ballentine v. Meta Platforms, Inc., et al., Case No. 3:25-cv-07671-CRB (the "Federal Action"). The Federal Action named Accenture and Meta as defendants.

65. The Federal Action was voluntarily dismissed without prejudice on February 13, 2026.

66. The Federal Action alleged that Meta invoked a child sexual exploitation ("CSE") enforcement action against Plaintiff on July 4, 2022; that Meta restored contractual status for white comparators flagged under the same policy during the same enforcement period while Plaintiff's status was not restored; and that Plaintiff sent Meta a written reinstatement demand on April 22, 2025, which Meta constructively denied.

67. The Federal Action further alleged that Meta and Accenture operated a joint content moderation pipeline in which Accenture reviewers conducted final human review of enforcement matters labeled under Meta's CSE policy; that Accenture reviewers had access to profile photos and government identification sufficient to identify a user's race at the time of review; and that Accenture and Meta engaged in a conspiracy to deprive Plaintiff of equal rights to make and enforce contracts under 42 U.S.C. §§ 1981, 1982, and 1985(3).

68. The federal complaint filed in the Northern District of California specifically alleged that the CSE designation prevented Plaintiff from obtaining legal representation. Paragraph 12 of the federal complaint states: "Meta's false CSE designation on Plaintiff, affirmed in Accenture's final human review process, has accomplished its purpose. Attorneys will not take his case. Plaintiff's business has been destroyed, his commercial property withheld, his access to continuing education severed, and his participation in digital commerce permanently foreclosed. It is against this backdrop that Plaintiff proceeds, pro se."

69. These allegations were on the public docket before Accenture filed the First Motion.

70. On February 9, 2026, Plaintiff filed a related action in the Middle District of Florida (Case No. 6:26-cv-00286-AGM-DCI). The complaint alleges that Anderson signed filings that placed Plaintiff's name in proximity to child sexual exploitation terminology at least nine times and discloses Plaintiff's status as a survivor of childhood sexual abuse.

15

71. On February 17, 2026, Plaintiff filed a second related action in the Middle District of Florida (Case No. 6:26-cv-00376-AGM-RMN).

72. On March 2, 2026, Plaintiff filed this action in the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida. On March 25, 2026, Accenture removed this action to this Court.

**H.    The Defamatory Publications and Textual Analysis**

73. The original complaint filed on September 9, 2025 in the Federal Action contained a singular footnote with the following text: "As a CSA survivor, Plaintiff gratefully acknowledges the unwavering support of his wife, whose steady presence made the psychological recovery, and subsequent preparation of this Complaint possible. He further acknowledges his children, especially his eldest, who endured his distance during the preparation of this filing after once celebrating his NRVTA graduation with pride. This work now returns to them, just as their father and husband does."

74. Accenture, through Anderson, reviewed the complaint which contained the footnote before preparing a responsive motion.

75. On September 30, 2025, Plaintiff emailed counsel for Accenture and Meta proposing mediation as an alternative to Rule 12 motion practice. On October 3, 2025, Meta's counsel responded that mediation would not be productive.

76. On October 1, 2025, Anderson responded to Plaintiff's proposal and requested that Plaintiff include counsel for Meta on all communications, stating the purpose was "so the parties can be coordinated."

77. On October 4, 2025, Anderson, as counsel for Accenture, responded: "Accenture's position is the same as Meta's."

78. On October 16, 2025, Accenture, through Anderson, filed a motion to dismiss in the Federal Action (the "First Motion"). The First Motion was filed on the public federal court docket and is publicly accessible via the federal Public Access to Court Electronic Records (PACER) system.

79. The First Motion, signed by Anderson, stated: "An alternative explanation for Accenture's recommendation—a legitimate community standards violation by Ballentine—is consistent with the facts alleged in the complaint."

80. The First Motion did not identify any specific content, any specific community standard, or any factual basis supporting the assertion that Plaintiff committed a "legitimate community standards violation."

81. The First Motion did not allege that Plaintiff committed a CSE violation.

82. On October 24, 2025, Plaintiff emailed Anderson requesting that Accenture include clarification in its forthcoming filing that Accenture did not contend Plaintiff violated child protection laws.

83. On October 28, 2025, Anderson sent an email communication to Plaintiff. In that communication, Anderson quoted from the First Motion: "Ballentine alleges there was no CSE violation associated with his account."

84. In that communication, Anderson stated that Accenture's argument "expressly accepts as true" the complaint's assertion that there was no CSE violation and that the First Motion set forth "an alternative explanation... that is unrelated to CSE."

85. In that communication, Anderson stated: "In Accenture's forthcoming motion to dismiss... we will include language reinforcing this point."

86. On October 31, 2025, Accenture, through Anderson, filed a second motion to dismiss in the Federal Action (the "Second Motion").

87. The Second Motion changed the language from "a legitimate community standards violation by Ballentine" to "a legitimate violation of another community standard unrelated to CSE."

88. The Second Motion did not identify any specific community standard that Plaintiff allegedly violated, any specific content that Plaintiff allegedly posted, or any factual basis for the revised statement.

89. The First Motion did not state that resolving any issue presented required the Court to determine whether Plaintiff violated any specific community standard, and it did not identify any such standard or content to support the asserted "legitimate community standards violation."

90. The First Motion did not explain how the "legitimate community standards violation" assertion corresponded to any identified content, any identified standard, or any identified enforcement category other than the child-safety context discussed throughout the filing.

91. The procedural posture of the First Motion was a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which tests the legal sufficiency of the complaint's allegations.

92. The First Motion's legal arguments addressed statute of limitations, causation, Section 230 immunity, and the adequacy of Plaintiff's comparator allegations. None of these arguments required or depended upon a determination that Plaintiff committed a community standards violation.

93. The statement asserting "a legitimate community standards violation by Ballentine—is consistent with the facts" was not necessary to, and did not support, any legal argument presented in the First Motion. The enforcement pipeline that Accenture staffed restored a user with a confirmed CSE violation while permanently excluding Plaintiff, who had no identified violation; the assertion that Plaintiff's enforcement reflected a "legitimate" violation was inconsistent with the operational record of the system Accenture operated.

94. The conduct alleged in the preceding paragraphs—asserting an unsubstantiated violation against Plaintiff in a public filing without identifying content, a standard, or a factual basis—is of the same character as the conduct alleged in the Federal Action: applying an unsubstantiated CSE designation to

Plaintiff's account without identifying violative content, without filing a CyberTipline report, and without citing a factual basis.

95. Plaintiff's reputation was harmed in Florida as a result of the defamatory publication.

96. Plaintiff suffered severe emotional distress. Plaintiff had disclosed his status as a CSA survivor in the federal complaint. The First Motion's public filing of CSE-adjacent references and implications without factual basis caused Plaintiff severe emotional distress.

97. The First Motion consists of seventeen pages of substantive text. It contains twenty-six instances of "Child Sexual Exploitation" or "CSE," forty-one references to Plaintiff by name or direct reference, and nine instances in which Plaintiff's name appears in the same sentence as CSE-related terminology. Five of those nine instances are concentrated within the first three pages. In the Background section, Plaintiff's name appears seven times, with six of those seven references placing Plaintiff's name in the same sentence or immediately adjacent sentence as CSE-related terminology.

**Table 1: Publication Metrics**

| Metric | Value |
|---|---|
| Total pages of substantive text in First Motion | 17 |
| "Child Sexual Exploitation" or "CSE" instances | 26 |
| Total references to Plaintiff by name or direct reference | 41 |

| Instances of Plaintiff's name in same sentence as CSE terminology | 9 |
|---|---|
| Instances concentrated in first 3 pages of memorandum | 5 |
| References to Plaintiff in Background section | 7 |
| Of those, references paired with CSE terminology | 6 |
| Content identified to support "legitimate violation" assertion | 0 |
| Community standard identified to support assertion | 0 |
| Factual basis provided for assertion | 0 |

**Table 2: Frequency and Concentration Ratios**

| Calculation | Result |
|---|---|
| CSE references per page | 1.53 |
| Plaintiff references per page | 2.41 |
| Percentage of Background references to Plaintiff paired with CSE | **85.7%** |
| Percentage of all Plaintiff-CSE pairings in first 3 pages | 55.6% |

## I.    Post-Filing Communications

98.    On February 9, 2026, Plaintiff sent an email to Anderson, with copies to Keegan and counsel for Meta, attaching the complaint filed in this action. The email stated: "The complaint, attached hereto, names Accenture LLP, Kirkland & Ellis LLP, Meta Platforms, Inc., and you individually as defendants." The email stated: "This will be the final direct correspondence from Plaintiff to you."

21

99.   On February 9, 2026, Plaintiff sent a separate email to Keegan and to counsel for Meta proposing a stipulation to continue the Rule 12 hearing in the Federal Action. Plaintiff did not include Anderson on the communication.

100. On February 10, 2026, Keegan responded by email. Keegan stated that Plaintiff "should continue to direct all communications to both Mr. Anderson and myself on behalf of Accenture." Keegan added Anderson to the email chain.

101.  Plaintiff replied to Keegan's email and removed Anderson from the chain. Plaintiff stated that he did "not intend to maintain direct communications with any named defendant in the Florida action." Plaintiff stated that the representation structure—in which Kirkland & Ellis LLP is a named defendant, Anderson is both a partner and a co-defendant, and both continue to represent co-defendant Accenture LLP—"raises difficult boundary questions." Counsel for Meta were copied.

102. On February 10, 2026, Keegan sent a second email. Keegan again added Anderson to the chain. Keegan stated: "Notice attorneys include Mr. Anderson and myself, so please continue to include him on communications."

103. Plaintiff replied to Keegan's second email and again removed Anderson from the chain.

104. Keegan had received the February 9, 2026 notice and complaint before sending both emails.

**J.     The March 25, 2026 Sequence**

105. On March 25, 2026, Plaintiff transmitted an abeyance proposal to Kirkland & Ellis LLP offering to pause proceedings across all three pending federal cases (Case Nos. 6:26-cv-00286-AGM-DCI, 6:26-cv-00376-AGM-RMN, and 5:26-cv-00213). The proposal required no concession from any party.

106. On March 25, 2026, at approximately 11:35 PM, Accenture, through Anderson, filed the Notice of Removal (Dkt. 1) in this action. The Notice of Removal republished the assertion from the First Motion: "An alternative explanation for Accenture's recommendation—a legitimate community standards violation by Ballentine—is consistent with the facts alleged in the complaint." (Dkt. 1, ¶ 8.) The Notice of Removal also republished the assertion from the Second Motion: "An alternative explanation for Accenture's recommendation—a legitimate violation of another community standard unrelated to CSE—is consistent with the facts alleged in the complaint." (Dkt. 1, ¶ 9.)

107. The republication placed both formulations of the assertion on the public docket of a new federal proceeding in the Middle District of Florida, Ocala Division. The assertions had previously appeared only on the docket of the Northern District of California.

108. On March 27, 2026, Plaintiff received the Notice of Removal and its accompanying exhibits via FedEx Priority Overnight courier. The package contained approximately 415 pages.

109. Section 1446(a) requires a removing defendant to file a notice of removal together with copies of process, pleadings, and orders served upon the

defendant in the action being removed. The action being removed was the Lake County state court proceeding. The approximately 415-page package included filings from the Northern District of California, the Middle District of Florida Orlando Division, and discovery materials — including the First Motion containing the assertion set forth in paragraph 79. Plaintiff is not registered for electronic filing in any of the three pending federal actions in this District (Case Nos. 5:26-cv-00213, 6:26-cv-00286, and 6:26-cv-00376). Federal Rule of Civil Procedure 5(b)(2) requires service of filed documents on parties not registered for electronic filing through conventional means, including delivery or mailing. *Accenture's counsel has not served Plaintiff by mail or courier for any other filing across all three actions.*

110.   Co-defendant TaskUs, through its counsel, has served Plaintiff by U.S. mail in compliance with Rule 5(b)(2).

111.   On March 26, 2026, Plaintiff filed a Motion to Drop Kirkland & Ellis LLP (Dkt. 10). The fraudulent joinder argument—the sole basis for quoting the NDCA motions in the Notice of Removal—became moot. The defamatory content quoted in paragraphs 8 and 9 of the Notice of Removal served no remaining litigation purpose.

112. On March 28, 2026, Plaintiff transmitted a written request to Defendants to redact or correct the "legitimate community standards violation" characterizations from the Notice of Removal.

113.   Anderson refused to redact. The defamatory assertions remain on the public docket of this Court.

## COUNT I

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(Against Meta Platforms, Inc., Accenture LLP, Devin S. Anderson, Christopher W. Keegan, TaskUs, Inc., and Genpact Limited)*

114.   Plaintiff incorporates by reference Facts Sections A, B, C, D, E, F, G, H, I, and J.

115.   On July 4, 2022, Meta and the Vendor Defendants invoked Meta's Child Sexual Exploitation enforcement designation against Plaintiff without identifying any content that violated the policy, required Plaintiff to submit his U.S. passport as a precondition to final human review, and permanently disabled his accounts after a reviewer affirmed the CSE invocation with Plaintiff's profile photograph and government-issued identification visible at the decision point. Meta and the Vendor Defendants routed the matter through a workflow that did not result in a NCMEC report. No law enforcement agency has contacted Plaintiff in more than three years.

116.   The permanent disablement classified Plaintiff under an enforcement category associated with child sexual exploitation, foreclosed his business operations and professional access, and resulted in attorneys declining to represent Plaintiff upon learning of the designation. No content was identified. No standard was cited. No factual basis was provided.

117. In April 2023, Plaintiff registered a new Facebook account to access continuing education through the NRVTA Alumni Facebook Group. Meta terminated the account before Plaintiff could publish any content. Meta and the Vendor Defendants restored users flagged under the same enforcement family during the same general period, including one user whose content Meta confirmed constituted a CSE violation, while permanently excluding Plaintiff, who had no identified violation.

118. Accenture participated in the enforcement pipeline that originated the CSE designation and staffed the final human review within Meta's enforcement framework. More than three years later, and after Plaintiff disclosed his CSA-survivor status, Accenture, through Anderson, published on a public federal docket the assertion that Plaintiff committed "a legitimate community standards violation" without identifying any content, standard, or factual basis, while repeatedly pairing Plaintiff's name with CSE terminology. Accenture published this assertion after its counsel acknowledged in writing that no CSE violation occurred. Accenture's second filing revised the assertion but again identified nothing. Neither assertion has been clarified, substantiated, or withdrawn.

119. The First Motion placed Plaintiff's name in close textual proximity to child sexual exploitation terminology at least nine times, with five such instances concentrated within the first three pages of the memorandum. The textual characteristics of the First Motion are set forth in Section H.

120. Accenture, through Anderson, published the assertion after reviewing Plaintiff's CSA-survivor disclosure contained in the federal complaint.

121. The assertion that Plaintiff committed "a legitimate community standards violation" was not necessary to any defense raised in Accenture's Rule 12(b)(6) motions. Accenture's motions raised failure to state a claim, preemption, and immunity. None required asserting that Plaintiff actually committed a violation.

122. On February 9, 2026, Plaintiff filed a related action in this District naming Anderson as an individual defendant and transmitted a notice stating that the communication would be the final direct correspondence from Plaintiff to Anderson.

123. On February 10, 2026, Keegan twice added Anderson to email communications with Plaintiff. Each re-addition occurred after Plaintiff had removed Anderson from the chain, after Plaintiff had stated in writing that he would not communicate with any named defendant, and after Keegan had received the February 9, 2026 notice stating it would be the final direct correspondence from Plaintiff to Anderson.

124. Keegan acted with knowledge of the complaint's allegations, including Plaintiff's disclosed status as a survivor of childhood sexual abuse, and with knowledge that Anderson is alleged to have caused Plaintiff severe emotional distress.

125. Keegan's conduct, in the context of Plaintiff's disclosed status as a survivor of childhood sexual abuse and Keegan's knowledge that Anderson is the individual alleged to have caused Plaintiff severe emotional distress, was extreme and outrageous.

126. Keegan's conduct caused Plaintiff additional severe emotional distress, including aggravation of the harms described in this complaint.

127. On March 25, 2026, after Plaintiff offered to pause all proceedings, Accenture, through Anderson, filed the Notice of Removal (Dkt. 1) in this action. The Notice of Removal republished both formulations of the defamatory assertion—the First Motion's "legitimate community standards violation by Ballentine" and the Second Motion's "legitimate violation of another community standard unrelated to CSE"—into a new proceeding in a new judicial district. The republication occurred on the same day Plaintiff transmitted the abeyance proposal.

128. On March 26, 2026, Plaintiff filed a Motion to Drop Kirkland & Ellis LLP (Dkt. 10). The Notice of Removal quoted the NDCA motions in support of Accenture's fraudulent joinder argument against Kirkland. Kirkland was dismissed. The quoted assertions remain on the docket.

129. On March 28, 2026, Plaintiff requested that Defendants redact or correct the defamatory characterizations from the Notice of Removal.

130. Anderson refused to redact.

28

131. Anderson republished the defamatory assertions on the same day Plaintiff offered to pause all litigation. After Kirkland was dismissed, Anderson refused to correct the record. This conduct, in the context of the preceding phases, was deliberate or reckless.

132. The preceding paragraphs constitute a single escalating course of conduct: Meta and the Vendor Defendants first classified Plaintiff under a child sexual exploitation enforcement category without identified content, then continued his exclusion across accounts regardless of his conduct, and restored others flagged under the same enforcement family—including one with a confirmed CSE violation—while maintaining Plaintiff's permanent exclusion; then Accenture, a defendant that participated in the originating enforcement, published on a public federal docket that Plaintiff committed a "legitimate" violation without basis and after acknowledging no CSE violation—doing so after learning Plaintiff is a CSA survivor; then, after Plaintiff filed suit naming the responsible individual, that individual's partner twice added the named individual to communications after Plaintiff removed him and stated in writing he would not communicate with any named defendant; then, on the same day Plaintiff offered to pause all litigation, Accenture republished both formulations of the defamatory assertion into a new federal proceeding and caused the republication to be physically delivered to Plaintiff via Priority Overnight courier—the sole mail or courier delivery from Accenture's counsel across three federal actions in which conventional service was required for every filing—and when asked to correct the

record after Kirkland was dismissed, refused. This course of conduct exceeds all bounds of decency tolerated in a civilized community.

133. Each Defendant named in this count intended to cause severe emotional distress or acted with reckless disregard of the high probability their conduct would do so. Meta and the Vendor Defendants understood that a CSE designation without identified content is associated with child sexual exploitation and that 18 U.S.C. § 2258A provides for criminal investigation of such conduct. Accenture, through Anderson, acknowledged in writing that no CSE violation occurred, reviewed Plaintiff's CSA-survivor disclosure, and then published the assertion that Plaintiff committed a "legitimate" violation while pairing Plaintiff's name with CSE terminology. Keegan acted with knowledge of the complaint's allegations and of Plaintiff's disclosed CSA-survivor status. Accenture, through Anderson, republished the defamatory assertions on the same day Plaintiff offered to pause all litigation, and refused to correct the record after Kirkland was dismissed. Accenture's counsel selected Priority Overnight courier delivery for the sole filing containing the defamatory republication while not serving Plaintiff by mail or courier for any other filing across three federal actions, notwithstanding the conventional-service requirements of Federal Rule of Civil Procedure 5(b)(2).

134. The conduct attributed to each Defendant named in this count was a factual and proximate cause of Plaintiff's severe emotional distress. The distress originated with the July 4, 2022 enforcement event by Meta and the Vendor Defendants and was intensified by Accenture's October 2025 publications through

Anderson, Keegan's February 2026 conduct, and the March 2026 republication by Accenture through Anderson and the refusal to correct the record. Plaintiff, a CSA survivor classified under a child sexual exploitation category without identified content, then subjected to public assertions that he committed a "legitimate" violation by a defendant that acknowledged otherwise, then twice added to communications with the individual he had identified as the source of his harm, and then subjected to republication of those assertions on the same day he offered to pause all litigation, suffered humiliation, mental anguish, and physical manifestations of distress.

## COUNT II

### DEFAMATION (LIBEL)
*(Against Accenture LLP and Devin S. Anderson)*

135. Plaintiff incorporates by reference Facts Sections A, B, C, D, E, F, G, H, I, and J.

136. On October 16, 2025, Accenture, through Anderson, filed the First Motion on the public federal court docket, accessible to third parties through PACER.

137. The statement was of and concerning Plaintiff. The First Motion identified Plaintiff by name.

138. The First Motion asserted "a legitimate community standards violation by Ballentine—is consistent with the facts" in a filing whose textual

31

characteristics are set forth in Section H of this Complaint. The publication conveyed a defamatory meaning.

139. The publication was false and defamatory by implication in that it conveyed to readers that Plaintiff engaged in a CSE violation or child-protection-law violation warranting enforcement action. Plaintiff did not commit a CSE violation or a child-protection-law violation.

140. After the First Motion was filed, Anderson stated in writing that Accenture "expressly accepts as true" the complaint's assertion that there was no CSE violation, stated that Accenture would include language reinforcing this point in its forthcoming motion, and Accenture, through Anderson, later changed its phrasing to reference "another community standard unrelated to CSE" without identifying any standard or content.

141. Accenture, through Anderson, drafted and published the statement with at least negligence concerning its truth or falsity. The First Motion asserted a "legitimate" violation without identifying any content, any standard, or any factual basis.

142. Alternatively, Accenture, through Anderson, published the statement with express malice. Anderson acknowledged in writing that Accenture accepted as true the absence of any CSE violation. Accenture, through Anderson, then filed the Second Motion asserting "a legitimate violation of another community standard unrelated to CSE" without identifying any content, any standard, or any

factual basis. These facts support an inference of knowledge of falsity or reckless disregard for the truth.

143. The assertion of a "legitimate" violation of an unspecified community standard—in a filing using CSE terminology in close proximity to Plaintiff's name at least nine times—tends to prejudice Plaintiff in the eyes of a substantial and respectable minority of the community.

144. As a direct and proximate result of the defamatory publication by Accenture, through Anderson, Plaintiff suffered damages, including injury to reputation and severe emotional distress.

## COUNT III

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Fla. Stat. § 501.204)
*(Against Meta Platforms, Inc., Accenture LLP, TaskUs, Inc., and Genpact Limited)*

145. Plaintiff incorporates by reference Facts Sections A, B, C, D, E, F, and G.

146. Plaintiff is a person who suffered actual damages as a result of Meta's and the Vendor Defendants' unfair and deceptive acts or practices in the conduct of trade or commerce. Plaintiff lost money or property including loss of business data, customer communications, and foreclosed return on business investments. Meta and each Vendor Defendant engaged in trade or commerce within the meaning of Fla. Stat. § 501.203 by providing platform services, advertising services, and content-moderation services.

33

147. Meta and the Vendor Defendants engaged in deceptive acts or practices likely to mislead a consumer acting reasonably in the same circumstances by: (a) applying a CSE enforcement designation to Plaintiff without identifying violative content; (b) requiring identity verification as a precondition to final review under that designation; and (c) permanently disabling Plaintiff's account under the CSE designation while routing the enforcement matter through a non-report workflow inconsistent with the stated justification. A reasonable consumer would be misled by a CSE designation that did not correspond to an actual CSE violation and that was not reported to NCMEC as would be expected for actual CSE violations under 18 U.S.C. § 2258A.

148. Meta publicly represents it reports "all apparent" CSE content to NCMEC. Meta labeled Plaintiff under CSE but did not report him. A reasonable consumer would understand a CSE designation to correspond to an apparent violation reported to law enforcement. The designation did not correspond to a report. That is the deception.

149. Meta and the Vendor Defendants engaged in unfair practices that are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers by: (a) exercising discretion at the enforcement chokepoint to route matters into a non-report workflow or a reporting workflow without transparency; (b) permanently withholding users' account-resident business property after enforcement without providing a mechanism for return. These practices offend

established public policy and cause substantial injury that consumers could not reasonably avoid and that is not outweighed by any countervailing benefit.

150. Meta's and the Vendor Defendants' conduct was unconscionable in that Meta and the Vendor Defendants exercised enforcement discretion for some users flagged under the same enforcement family during the same general period while permanently excluding Plaintiff, and in that the CSE designation carried extraordinary stigma and foreseeable consequences that Meta and the Vendor Defendants understood and imposed without identifying violative content.

151. Meta's and the Vendor Defendants' deceptive, unfair, and unconscionable acts and practices were a direct cause of Plaintiff's actual damages.

152. As a direct result, Plaintiff suffered actual damages including loss of business data, customer communications valued at approximately $3,000, foreclosed return on approximately $20,000 in business investments, loss of business relationships and revenue, and additional damages to be proven at trial.

153. Plaintiff seeks declaratory and injunctive relief under Fla. Stat. § 501.211(1) in addition to actual damages under § 501.211(2). The declaratory and injunctive relief sought under § 501.211(1) is available "without regard to any other remedy or relief to which a person is entitled." The relief sought targets ongoing, systems-level practices requiring prospective changes to Defendants' enforcement architecture that cannot be compensated through monetary damages.

154. Plaintiff seeks declaratory and injunctive relief including, but not limited to: return of Plaintiff's account-resident business data; documentation of the July 4, 2022 enforcement determination; and prospective relief as appropriate. The specific terms of injunctive relief are to be determined at the remedial stage.

155. Plaintiff seeks attorneys' fees under Fla. Stat. § 501.2105 and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Award compensatory damages on all counts in an amount not less than $250,000,000;

B. Award declaratory and injunctive relief under Fla. Stat. § 501.211(1) as set forth in Count III;

C. Award attorneys' fees under Fla. Stat. § 501.2105;

D. Award costs of suit; and

E. Award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all issues so triable.

Date: April 1, 2026

Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, pro se
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2026, I filed the foregoing with the Clerk of Court. All counsel of record are registered CM/ECF users and will be served electronically through the Court's CM/ECF system upon docketing.

Marvelle J. Ballentine