# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

---

MARVELLE J. BALLENTINE,

       Plaintiff,

    v.

META PLATFORMS, INC.,
ACCENTURE LLP, TASKUS, INC.,
GENPACT USA, INC., DEVIN S.
ANDERSON, KIRKLAND & ELLIS
LLP; and CHRISTOPHER W.
KEEGAN,

       Defendants.

Case No. 5:26-cv-00213-AGM-PRL

Judge Anne-Leigh Gaylord Moe

---

## DEFENDANT ACCENTURE LLP'S
## MOTION TO DISMISS PLAINTIFF'S CLAIMS

Defendant Accenture LLP ("Accenture") moves to dismiss with prejudice all claims asserted by Plaintiff Marvelle J. Ballentine against Accenture pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

This is Plaintiff's eighth complaint and fourth lawsuit filed against Accenture since September, and he still fails to plead valid claims. Plaintiff's core claims stem from the termination of his Facebook advertising account by defendant Meta Platforms, Inc. ("Meta"). Plaintiff alleges in this amended complaint that Meta terminated his account for a violation of Meta's child sexual exploitation ("CSE")

policy—which covered a range of offenses from illegal, reportable CSE to less serious violations of Meta's own community standards involving children—and that Accenture *may have been* one of three possible content moderators that reviewed his account before termination.  But nothing alleged against Accenture amounts to a claim upon which relief can be granted.  This Court has three independent bases for dismissal of Plaintiff's claims against Accenture.

*First*, Plaintiff has engaged in improper claim splitting because these claims arise from the same conduct that is the subject of related cases in this Court.  Plaintiff cannot spread his claims across three different courts in four different lawsuits when he bases those claims on the same set of common facts.  The instant action continues a pattern of wasting judicial resources and undermining efficiency, and the Court should dismiss these claims in favor of the first-filed actions.

*Second*, all of Plaintiff's claims against Accenture are barred entirely by either Florida's litigation privilege or the Communications Decency Act ("CDA").  Plaintiff admits on the face of his amended complaint that his primary claims against Accenture for defamation and intentional infliction of emotional distress ("IIED") arise from statements that Accenture made in filed pleadings or from other litigation-related conduct.  This conduct is unequivocally protected by Florida's litigation privilege.  The rest of Accenture's alleged unlawful conduct is likewise protected by the CDA.  The CDA protects any decisions made by a content moderator, like Accenture, regarding whether to exclude content that third parties seek to post online.  That is exactly what Plaintiff alleges that Accenture may have done here,

and Accenture enjoys absolute immunity for any alleged decision to terminate Plaintiff's Facebook account.  In sum, this Court should dismiss the claims against Accenture because Accenture's conduct is not actionable.

*Third*, Plaintiff's allegations do not sufficiently state a claim against Accenture. Plaintiff takes issue with Meta's CSE "designation," as he refers to it, and challenges his account termination, alleging that Meta was wrong to terminate his account because it did not contain statutorily reportable CSE material.  The problem with Plaintiff's amended complaint—like all the other complaints he has filed—is that he never describes the content posted on his Facebook account nor alleges that it complied with all of the community standards covered by Meta's CSE policy, which extend beyond statutorily reportable CSE material.  Without more, Plaintiff cannot sufficiently allege that his account was improperly terminated and thus cannot challenge Accenture's possible recommendation to terminate his account.

Plaintiff also asserts claims against Accenture for statements that Accenture has made in pleadings defending against Plaintiff's claims.  Plaintiff misunderstands the context of Accenture's motion to dismiss Plaintiff's first discrimination case filed in California and misreads Accenture's motion as suggesting he actually engaged in reportable CSE.   Instead, Accenture's motion attacked the sufficiency of the allegations in Plaintiff's own complaint.  Likewise, Accenture's filings taken in this case necessarily respond to the alleged defamation in Accenture's original motion to dismiss—they do not make allegations of their own about Plaintiff's actual conduct with respect to his Facebook account.  As such, in addition to being protected by the

litigation privilege, Accenture's statements do not amount to defamation and certainly do not meet Florida's extremely high burden of "extreme and outrageous" conduct to establish IIED. Accenture should not have to continue to defend itself against the same baseless claims in yet another lawsuit. This Court should dismiss the claims against Accenture with prejudice.

## BACKGROUND

### I.    Plaintiff First Sues Accenture in California for Racial Discrimination.

On September 9, 2025, Plaintiff sued Meta and Accenture in the U.S. District Court for the Northern District of California for racial discrimination. *See Ballentine v. Meta Platforms, Inc., et al.*, Case No. 3:25-cv-07671-CRB (N.D. Cal. Sept. 9, 2025) (the "California Action"). Plaintiff asserted four federal claims against Accenture under 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3), and another claim under California's Unfair Competition Law. *Id.*, Complaint, Dkt. No. 1 at ¶¶ 106–53 ("California Complaint" or "Cal. Compl."). Kirkland & Ellis LLP ("Kirkland") represented Accenture as counsel in the California Action, and Plaintiff was *pro se.*

Plaintiff alleged that Meta operates social-media platforms like Facebook serving over three billion users worldwide, allowing them to connect, communicate, and advertise online. *See id.* ¶ 24. As the host of a wide range of user content across its platforms, Meta takes significant steps to moderate its content, including by establishing content policies and then enlisting third parties like Accenture to staff human moderators for review of users' appeals of Meta policy violations. *Id.* ¶¶ 25–27, 35. Even when Accenture reviews appeals, however, Meta retains authority to

suspend or ban accounts that do not follow its policies. *Id.* Relevant here, Meta actively screens for materials that specifically violate its policy against CSE, which prohibits unlawful CSE as well as a range of content that violates community standards related to content involving children. *See* Ex. 1 (Meta's CSE Policy).

Plaintiff alleged that he "operated a Meta-approved advertising account for RV repair services" on Facebook, beginning in June 2022. Cal. Compl. ¶¶ 6, 44–45. He also used his account to access continuing-education materials through the National RV Training Academy's Alumni Facebook Group. *Id.* ¶ 42. Plaintiff alleged that he "submitted his U.S. passport, which displayed the image of a Black man" on July 4, 2022, and that same day, "Meta ratified the permanent termination of his account under its 'Child Sexual Exploitation' policy." *Id.* ¶¶ 45–46. Plaintiff asserted in the California Complaint that Meta terminated his Facebook account because of his race and not because of a CSE violation, *see id.* ¶ 2, and that Accenture assisted by reviewing his account, *see id.* ¶ 10. The California Complaint does not say what the content of Plaintiff's Facebook account does, and Plaintiff does not allege that his account otherwise complied with all Meta policies. *See generally id.*

## II.    Accenture Moves to Dismiss the California Complaint.

Accenture and Meta separately moved to dismiss the California Complaint for failure to state a claim upon which relief could be granted. Among other defenses, Accenture argued in its motion to dismiss that the California Complaint did not plausibly allege that Accenture's human moderators engaged in invidious racial discrimination against Plaintiff. Motion to Dismiss, *Ballentine v. Meta Platforms, Inc.*,

Case No. 3:25-cv-07671-CRB (N.D. Cal. Oct. 16, 2025), Dkt. No. 33 at 7–11. The motion explained that the California Complaint alleged that Plaintiff did not commit unlawful CSE but failed to allege that Plaintiff's Facebook account did not otherwise violate Meta's CSE policy by violating other community standards. *Id.* at 11. Because the California Complaint did not "describe Meta's community standards" under its CSE policy or "detail the content of [Ballentine's] own advertisements," Accenture argued that the California Complaint did not sufficiently allege that Plaintiff complied with Meta's policy, which could be a non-discriminatory "alternative explanation" for Accenture's alleged recommendation to terminate Plaintiff's account. *Id.* As a result, Accenture argued that the California Complaint failed to state a claim for racial discrimination as a matter of law. The motion to dismiss was signed by Devin S. Anderson ("Anderson") of Kirkland, Accenture's counsel of record in the California Action.

## III.    Plaintiff Sues Accenture in Florida Federal Court Asserting Defamation, Conspiracy to Defame, and IIED.

On February 9, 2026, Plaintiff sued Meta, Accenture, Kirkland, and Anderson in federal court in Florida ("Federal Tort Complaint") asserting three tort claims arising from Accenture's motion to dismiss the California Complaint: defamation (libel), civil conspiracy to defame, and intentional infliction of emotional distress ("IIED"). *Ballentine v. Accenture LLP et al.*, Case No. 6:26-cv-00286-AGM-DCI (M.D. Fla. Feb. 9, 2026) (the "Federal Tort Action"). As Plaintiff stated, "[t]his action arises from defamatory statements published by Accenture LLP, through its

counsel Devin S. Anderson of Kirkland & Ellis LLP, in federal court filings . . . ." *Id.*, Complaint, Dkt. No. 1 at ¶ 1.

Two days later, Plaintiff amended the complaint, adding as a defendant Christopher W. Keegan ("Keegan"), also a Kirkland attorney who was counsel for Accenture in the California Action. *See id.*, Amended Complaint, Dkt. No. 4. Plaintiff asserted claims of IIED and civil conspiracy against Keegan based on statements made by Keegan on behalf of Accenture in email communications to Plaintiff during the course of the California Action. *See id.* Plaintiff later amended the complaint a second time, voluntarily dismissing Accenture and Kirkland as defendants after this Court, *sua sponte*, entered an Order to Show Cause why Plaintiff's complaint should not be dismissed for lack of diversity jurisdiction. *See id.*, Order to Show Cause, Dkt. No. 11 at 2 (explaining that Plaintiff had "not properly alleged the citizenship of Accenture or Kirkland").

## IV.    Plaintiff Abandons His California Action and Sues Accenture for Discrimination in Florida Federal Court.

After filing the Federal Tort Action and before the California court could rule on Accenture's and Meta's motions to dismiss, Plaintiff voluntarily dismissed the California Action and refiled the same claims in a new discrimination action in this Court. *Ballentine v. Meta Platforms, Inc. et al.*, Case No. 6:26-cv-00376-AGM-DCI (M.D. Fla. Feb. 17, 2026) ("Federal Discrimination Action"). Plaintiff asserted the same claims as the California Action arising from the same conduct. *Id.*, Amended Complaint, Dkt. No. 19 at ¶¶ 125–77 ("Federal Discrimination Complaint"). The

7

only difference is that Plaintiff dropped the California law claim related to unfair competition, and Plaintiff added two other "Vendor Defendants"—TaskUs, Inc. ("TaskUs") and Genpact USA, Inc. ("Genpact"). The Federal Discrimination Complaint now alleged that "[a] Vendor Defendant"—one of the third-party content moderators that Meta employs, Accenture, TaskUs, or Genpact—reviewed his account, not necessarily Accenture. *Id.* ¶ 7.

**V.      Plaintiff Sues Accenture Again in Florida State Court Based on the Same Alleged Conduct.**

On March 2, 2026, Plaintiff initiated this action by filing an "omnibus" complaint against all the defendants he previously sued in federal court for all the same claims or state-court equivalents. *See Ballentine v. Meta Platforms, Inc., et al.*, Case No. 35-2026-CA-000494 (Fla. 5th Cir. Ct. Mar. 2, 2026) ("Omnibus Action"). In this action, Plaintiff asserted state-law claims that paralleled the federal statutory violations alleged in the Federal Discrimination Complaint, including three alleged against Accenture:

8

| Federal Discrimination Action (M.D. Fla.) | Omnibus Action (Fla. 5th Cir. Ct.) |
|---|---|
| Violation of 42 U.S.C. § 1981: Interference with Right to Make, Enforce, and Modify Advertising Contracts – *Meta* | Conversion – *Meta* |
| Violation of 42 U.S.C. § 1981: Interference with Right to Make and Enforce Third-Party Contracts – *Meta, Accenture, Genpact, TaskUs* | Tortious Interference with Business Relationships – *Meta, Accenture, Genpact, TaskUs* |
| Violation of 42 U.S.C. § 1982: Interference with Right to Hold and Convey Personal Property – *Meta, Accenture, Genpact, TaskUs* | |
| Violation of 42 U.S.C. § 1983: Deprivation of Constitutional Rights Under Color of State Law – *Meta, Accenture, Genpact, TaskUs* | |
| Violation of 42 U.S.C. § 1985: Conspiracy to Deprive Plaintiff of Civil Rights – *Meta, Accenture, Genpact, TaskUs* | Civil Conspiracy (Enforcement) – *Meta, Accenture, Genpact, TaskUs* |
| | Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. § 501.204) – *Meta, Accenture, Genpact, TaskUs* |

*Id.*, Complaint, Dkt. No. 2 at ¶¶ 106–13, 145–49, 162–68 ("Omnibus Complaint").

Plaintiff also asserted the same state-law tort claims that he asserted in the Federal Tort Complaint:

9

| Federal Tort Complaint (M.D. Fla.) [1] | Omnibus Action (Fla. 5th Cir. Ct.) [2] |
|---|---|
| Defamation (Libel) – *Anderson* | Defamation (Libel) – *Anderson, Accenture* |
| Intentional Infliction of Emotional Distress – *Anderson, Keegan* | Intentional Infliction of Emotional Distress – *Anderson, Keegan, Meta, Accenture* |
| Civil Conspiracy to Defame – *Meta, Anderson, Keegan* | Civil Conspiracy to Defame – *Meta, Accenture, Anderson, Keegan* |

*Id.* ¶¶ 119–44, 150–61.  Plaintiff seeks compensatory damages "in an amount not less than $250,000,000."  *Id*. ¶ 172.

On March 25, 2026, Accenture removed this action from state court to this Court.  Dkt. No. 1.  Accenture then timely moved to dismiss.  Dkt. No. 20.  The next day, Plaintiff amended the complaint to drop the conspiracy claims and the claim for tortious interference with business relationships.  Dkt. No. 32 ("Amended Omnibus Complaint" or "Am. Omnibus Compl.").

## LEGAL STANDARD[3]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  If the allegations are more conclusory than factual, the court need

---

[1]    Plaintiff originally filed the Federal Tort Complaint against Accenture and Kirkland but then voluntarily dismissed those parties after this Court issued an Order to Show Cause.  *See* Second Amended Complaint, *Ballentine v. Meta Platforms, Inc. et al.*, Case No. 6:26-cv-00286-AGM-DCI (M.D. Fla. Mar. 4, 2026), Dkt. No. 20.

[2]    Plaintiff originally filed the Omnibus Complaint against Kirkland but then voluntarily dismissed Kirkland after Accenture removed this action to federal court.  Dkt. No. 10.

[3]    All citations are cleaned up with emphasis added, unless otherwise noted.

not assume their truth. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Courts will dismiss a complaint where a plaintiff provides only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A plaintiff must make factual allegations that "raise a right to relief above the speculative level," *id.*, and cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Although "[p]leadings from pro se litigants are held to a less stringent standard than pleadings drafted by attorneys," such pleadings still must meet the minimum pleading standards. *Thomas v. Hillsborough Cnty. Sheriff's Off.*, 2021 WL 3930511, at *2 (M.D. Fla. Sept. 2, 2021) (citing *Pugh v. Farmers Home Admin.*, 846 F. Supp. 60, 61 (M.D. Fla. 1994)).

## ARGUMENT

Plaintiff's claims against Accenture fail as a matter of law for three independent reasons. First, all of Plaintiff's claims should be dismissed for improper claim splitting with the other federal lawsuits that Plaintiff filed first in this Court. Second, Plaintiff's claims are entirely barred by either the Communications Decency Act or the litigation privilege. Finally, the allegations in the Amended Omnibus Complaint fail to state a claim as a matter of law. Plaintiff's claims against Accenture should be dismissed with prejudice.

## I.    All Plaintiff's Claims Should Be Dismissed for Improper Claim Splitting.

By filing an "omnibus" complaint, combining Plaintiff's previously filed claims against the same collective group of defendants, Plaintiff has engaged in improper claim splitting. The rule against claim splitting "requires a plaintiff to

11

assert all of its causes of action arising from a common set of facts in one lawsuit." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021). This ensures parties do not "waste scare judicial resources and undermine the efficient and comprehensive disposition of cases" by "spreading claims around in multiple lawsuits in other courts or before other judges." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). A defendant may raise the issue of claim splitting when "a second suit has been filed before the first suit has reached a final judgment." *Id.* at 840 n.3. There is no doubt that Plaintiff has harassed Accenture with a multiplicity of suits—four total, originally in three different courts—and, this Court should dismiss his claims here for improper claim splitting with the Federal Discrimination Action and the Federal Tort Action.

In determining whether a party has engaged in improper claim splitting, courts apply "a two-factor test": "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Id.* at 841–42. Plaintiff's claims in the instant action easily meet this test.

*First*, Plaintiff's claims asserted here involve the exact same parties as the Federal Discrimination Action and the Federal Tort Action combined:

| Complaint | Date Filed | Court | Defendants | |
|---|---|---|---|---|
| Federal Tort Complaint | Feb. 9, 2026 | M.D. Fla. | Meta<br>Anderson<br>Keegan[4] | |
| Federal Discrimination Complaint | Feb. 17, 2026 | M.D. Fla. | Meta<br>Accenture<br>Genpact<br>TaskUs | |
| Omnibus Action | Mar. 2, 2026 | Fla. 5th Cir. Ct. (removed to M.D. Fla.) | Meta<br>Accenture<br>Genpact<br>TaskUs | Anderson<br>Keegan |

This overlap satisfies the first prong of the inquiry. *See Santo v. Aerostar Training Servs.*, LLC, 2024 WL 6984159, at *4 (M.D. Fla. Oct. 8, 2024) ("Defendants are in privity with one another, all are involved in both lawsuits, and all are bound by the outcome of both cases. The first prong is therefore satisfied.").

*Second*, Plaintiff's claims in this action arise from the same transaction or series of transactions as Plaintiff's other two pending lawsuits. Under this prong, "a new action will be permitted only where it raises new and independent claims, *not* part of the previous transaction, based on the *new facts*." *Kennedy*, 998 F.3d at 1236. The relevant question is "whether the first suit, assuming it were final, would preclude the second suit." *Vanover*, 857 F.3d at 841. Here, the answer is "yes." Plaintiff's FDUTPA claim against Accenture is based on his allegations that Accenture

---

4    Plaintiff originally filed the Federal Tort Complaint against Accenture and Kirkland but then dropped those parties after this Court issued an Order to Show Cause. *See* Second Amended Complaint, *Ballentine v. Meta Platforms, Inc. et al.*, Case No. 6:26-cv-00286-AGM-DCI (M.D. Fla. Mar. 4, 2026), Dkt. No. 20.

improperly recommended Meta's termination of Plaintiff's Facebook advertising account, which is exactly what Plaintiff alleges in the Federal Discrimination Action against Accenture.  Plaintiff's remaining claims against Accenture—defamation and IIED—are based on Accenture's statements (through its counsel) in filed pleadings in the California Action, which is exactly what Plaintiff alleges in the Federal Tort Action against Accenture's counsel.  The only difference is that Plaintiff now asserts that Accenture again defamed him when Accenture quoted its original California motions in pleadings filed in the instant action.  And Plaintiff now claims that Accenture has added to his emotional distress by removing this case to this Court after Plaintiff allegedly offered to "pause" his other pending cases.  Am. Omnibus Compl. ¶ 132.  But Plaintiff also continues to acknowledge that all these alleged actions are part of "a single escalating course of conduct."  *Id*.  As such, the Amended Omnibus Complaint does not raise any "new and independent claims." *Kennedy*, 998 F.3d at 1236.

The claim-splitting doctrine "ensures that a plaintiff may not split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails."  *Vanover*, 857 F.3d at 841.  That is exactly what Plaintiff has done here. Because Plaintiff has engaged in improper claim splitting, his claims against Accenture in this lawsuit should be dismissed with prejudice.  *See Klayman v. Porter*, 2023 WL 2261814, at *3 (11th Cir. Feb. 28, 2023) (affirming dismissal of claims based on the claim-splitting doctrine where "[b]oth complaints alleged the same

pattern and practice of [alleged conduct] based on essentially the same set of underlying facts"); *see also Kent-Stevens v. CHS Emp. Grp. LLC*, 2025 WL 50318, at *2 (M.D. Fla. Jan. 8, 2025) ("The typical remedy for claim-splitting is a dismissal of the second action with prejudice.").

## II. Accenture's Conduct Is Protected by the Litigation Privilege and the CDA.

Plaintiff's claims should also be dismissed because they attack conduct that is protected by the law. Plaintiff's defamation and IIED claims are absolutely barred by Florida's litigation privilege because the Amended Omnibus Complaint makes clear that those claims arise from conduct and statements made during the course of judicial proceedings. And the Communications Decency Act shields Accenture from liability for the FDUTPA claim and the IIED claim to the extent Plaintiff seeks to hold Accenture liable for Meta's protected publication decision. These are independent bases to dismiss all the claims against Accenture.

### A. The Florida Litigation Privilege Protects Accenture's Conduct.

Plaintiff's defamation and IIED claims should be dismissed because they arise from conduct that is protected by Florida's litigation privilege. Under Florida law, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior" because "participants in litigation must be free to engage in unhindered communication" and "to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274

(11th Cir. 2004) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.,* 639 So.2d 606, 608 (Fla. 1994)).  "The litigation privilege in Florida provides all persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for acts taken in relation to those proceedings." *Cherdak v. Cottone*, 2023 WL 2044608, at *4 (M.D. Fla. Feb. 16, 2023). The litigation privilege is an affirmative defense that "may be considered in resolving a motion to dismiss when 'the complaint affirmatively and clearly shows the conclusive applicability' of the defense to bar the action." *Jackson*, 372 F.3d at 1277 (quoting *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988)).  Here, the Amended Omnibus Complaint affirmatively and clearly shows that (1) Accenture's conduct at issue is protected by the litigation privilege, and (2) the litigation privilege applies to the defamation and IIED claims asserted against Accenture.

The face of the Amended Omnibus Complaint clearly shows that Plaintiff's defamation and IIED claims against Accenture arise exclusively from litigation conduct.  Primarily, Plaintiff's claims relate to Accenture's statements made in its motion to dismiss the California Complaint (and its pleadings in this case that quote the same statements).  Am. Omnibus Compl. ¶¶ 135–44.  Because these statements were made in a pleading filed with a court, they clearly fall within the litigation privilege.  *See e.g.*, *Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1313 (M.D. Fla. 2025) (determining that Florida's litigation privilege applies when the "defamatory statements at issue were made either in front of a judicial officer or in pleadings or documents filed with the court").  Likewise, the fact of

Accenture's filing a notice of removal is litigation conduct that is protected by the litigation privilege. *See Jackson*, 372 F.3d at 1274 (holding that "[a]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding").[5]

The litigation privilege also applies to both defamation and IIED claims. Generally, courts have applied the privilege "to any tort or statutory cause of action based on false statements or other wrongful conduct." *Emergency Recovery, Inc.*, 773 F. Supp. 3d at 1312 (quoting *AGM Invs., LLC v. Bus. L. Grp., P.A.*, 219 So. 3d 920, 924 (Fla. 2d DCA 2017)).   As relevant to Plaintiff's claims, alleged defamatory statements made in court filings are "categorically immune from liability under the litigation privilege doctrine." *United States v. Madison*, 2025 WL 3623726, at *10 (M.D. Fla. Dec. 15, 2025).   Courts have also applied the privilege to bar claims of IIED. *See, e.g.*, *Cherdak*, 2023 WL 2044608, at *6 ("Litigation privilege immunizes acts done (or statements made) in connection with litigation from tort suits. Accordingly, this privilege extends beyond defamation claims to other tort claims, including intentional infliction of emotional distress."); *Medina Wright Berry Medina Wright v. Medina*, 2013 WL 12156046, at *7 (M.D. Fla. July 12, 2013) (dismissing claim for IIED on the basis that "the assertion of intentional infliction of emotional distress cannot be used to circumvent the immunity afforded to litigation conduct"); *see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So.2d 380, 384 (Fla.

---

[5]    To the extent Plaintiff also asserts IIED arising from Accenture's alleged recommendation to terminate his Facebook account, that conduct would be protected by the CDA. *See* Part II.B.

17

2007) ("The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin.").

The litigation privilege thus disposes of Plaintiff's defamation and IIED claims against Accenture, and those claims should be dismissed with prejudice as a result. *See also* Defs.' Motion to Dismiss, *Ballentine v. Accenture LLP et al.*, No. 6:26-cv-00286-AGM-DCI (M.D. Fla. Mar. 18, 2026), Dkt. No. 26 at 10–14.

**B.    Accenture Has Immunity for Its Alleged Conduct Under the CDA.**

Plaintiff's FDUTPA and IIED claims against Accenture likewise should be dismissed because they arise from conduct protected by the CDA.  To enjoy immunity under Section 230 of the CDA, Accenture must show that: (1) it is "a service provider or user of an interactive computer service;" (2) the relevant content contains information provided by "a different information content provider"; and (3) "the cause of action treats a defendant as a publisher or speaker of information." *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015); *see also* 47 U.S.C. § 230(c).

Accenture's content-moderation efforts fall squarely within this broad immunity.  First, Accenture is a "user of an interactive computer service" because Accenture necessarily accesses Meta—both its content and tools—to assist Meta with content moderation, and Meta is an interactive computer service.  *See Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) ("Facebook is [an] interactive computer service under the CDA." (citation omitted)).  Second, the

content at issue was indisputably provided by Plaintiff. And, third, Plaintiff's claims against Accenture indisputably seek to hold Accenture "liable for its exercise of a publisher's traditional functions—such as deciding whether to publish, withdraw, postpone or alter content." *Roca Labs*, 140 F. Supp. 3d at 1319; *see generally Doe on Behalf of Doe v. Grindr, LLC*, 2023 WL 7053471, at *2 (M.D. Fla. Oct. 26, 2023) (determining that a defendant is treated as a publisher when a plaintiff's claim is "inextricably linked" to a publication decision). As such, Accenture is entitled to Section 230 protection over any acts of content moderation that affected the publication of Plaintiff's content. *Mezey*, 2018 WL 5306769, at *1 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." (citation omitted)); *see also* Accenture's Motion to Dismiss, *Ballentine v. Meta Platforms, Inc. et al.*, No. 6:26-cv-00376-AGM-DCI (M.D. Fla. Mar. 20, 2026), Dkt. No. 29 at 17–20 (explaining why Plaintiff's same claims should be dismissed under both Section 230(c)(1) and (c)(2) as independent grounds for coverage).

## III.   The Amended Omnibus Complaint Fails to State a Claim.

Plaintiff's claims against Accenture fail for the additional, independent reason that the Amended Omnibus Complaint fails to state a claim as a matter of law.

**Defamation**. To state a claim for defamation in Florida, Plaintiff "must allege that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) [ ] the falsity of the statement caused injury to the plaintiff." *Grayson v. No Labels, Inc.*, 599 F. Supp. 3d 1184, 1188 (M.D. Fla. 2022). Plaintiff's defamation

claim against Accenture fails because the Amended Omnibus Complaint does not identify a statement that is false or defamatory within Accenture's pleadings. Accenture's original motion to dismiss simply argued that the California Complaint did not include allegations sufficient to support his claims of invidious racial discrimination.  Motion to Dismiss, *Ballentine v. Meta Platforms, Inc.*, Case. No. 3:25-cv-07671-CRB (N.D. Cal. Oct. 16, 2025), Dkt. No. 33, at 7–11 (arguing that a non-discriminatory reason for termination was "consistent with the facts *alleged in the complaint*").  In other words, the motion described what the California Complaint said—and what it did not say—the motion did not allege anything about Plaintiff's own conduct or the content in his Facebook account.[6]  Likewise, Accenture's pleadings in the instant case merely quoted what the alleged defamation was so that Accenture could defend itself against Plaintiff's claims.  As such, these allegedly defamatory statements were "not susceptible to a defamatory interpretation." *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984).

Nor does Plaintiff sufficiently allege defamation by implication based on Accenture's motion's alleged use of "CSE-related terminology" in close proximity to his name.  Am. Omnibus Compl. ¶ 97; *see id.* ¶ 138.  The California Complaint itself repeatedly referenced CSE and CSE-related terminology more than seventy times.  A motion to dismiss responding to a complaint by using the same terminology used in that complaint "could not possibly have a defamatory or harmful effect."  *Rubin v.*

---

[6]  At most, Accenture's argument in response to the California Complaint constitutes a non-actionable opinion on the legal merits of the Plaintiff's California claims.  *See Turner v. Wells*, 879 F.3d 1254, 1262–64 (11th Cir. 2018).

*U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001); *see also* Defs.' Motion to Dismiss, *Ballentine v. Accenture LLP, et al.*, No. 6:26-cv-00286-AGM-DCI (M.D. Fla. Mar. 18, 2026), Dkt. No. 26 at 14–17. The Court should dismiss Plaintiff's defamation claim against Accenture.

**IIED**. Plaintiff fails to state an IIED claim against Accenture because Accenture's alleged conduct is not sufficiently "extreme and outrageous" such that it goes "beyond all possible bounds of decency" and is "regarded as atrocious, and utterly intolerable in a civilized community," as required by Florida law. *Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1296 (M.D. Fla. 2006) (quoting *Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 278–79 (Fla. 1985)). Therefore, liability for IIED "does not extend to mere insults, indignities, threats, or false accusations." *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004).

Accenture's alleged conduct was neither extreme nor outrageous. A content moderator reviewing a Facebook account and affirming its termination "within Meta's enforcement framework"—as Plaintiff himself alleges, *see* Am. Omnibus Compl. ¶ 118—cannot possibly be said to "go beyond all possible bounds of decency." *Martinez*, 422 F. Supp. 2d at 1296. Similarly, the statements made in Accenture's motion to dismiss (that were quoted in pleadings in the instant case) do not come close to satisfying "the extremely high standard" under Florida law for "extreme and outrageous" conduct, which generally is not satisfied even by "verbal abuse." *Lopez v. Target Corp.*, 676 F.3d 1230, 1236–37 (11th Cir. 2012); *see also* Defs.'

21

Motion to Dismiss, *Ballentine v. Accenture LLP, et al.*, No. 6:26-cv-00286-AGM-DCI (M.D. Fla. Mar. 18, 2026), Dkt. No. 26 at 17–20.

Furthermore, Florida's single action rule independently bars Plaintiff's IIED claim against Accenture to the extent that the claim is based on the same statements that are also the subject of Plaintiff's defamation claim. *See Cherdak*, 2023 WL 2044608, at *6 ("[E]ven in the absence of litigation privilege, [plaintiff's] intentional infliction of emotional distress claim would still be improper because it is merely a restatement of his defamation claim."). Plaintiff's IIED claim against Accenture should be dismissed.

**FDUTPA**.    Plaintiff's FDUTPA claim fails because Accenture's alleged conduct was neither deceptive nor unfair. "The *sine qua non* of a FDUTPA claim is a 'deceptive act' or 'unfair practice,' i.e., an act that is likely to mislead consumers or a practice that offends established public policy and is otherwise 'immoral, unethical, oppressive, unscrupulous or substantially injurious.'" *Fid. & Guar. Ins. Co. v. Ford Motor Co.*, 707 F. Supp. 2d 1300, 1316 (M.D. Fla. 2010). An act is deceptive only "if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1132 (S.D. Fla. 2021).

Here, the only deceptive act that Plaintiff alleges is that "[a] reasonable consumer would be misled by a CSE designation that did not correspond to an actual CSE violation and that was not reported to NCMEC as would be expected for actual CSE violations under 18 U.S.C. § 2258A." Am. Omnibus Compl. ¶ 147. For

starters, there are no pleaded facts that this alleged deceptive practice is likely to harm consumers. Moreover, this act simply was not performed by Accenture. Plaintiff takes issue with Meta's "CSE policy," which prohibits both reportable CSE violations to NCMEC *and* violations of community standards related to children that are not reportable. As the Amended Omnibus Complaint repeatedly alleges, however, the CSE policy, under which Plaintiff's account was terminated, was created by Meta—not Accenture. *See, e.g.*, *id.* ¶ 38. As such, Plaintiff has not sufficiently alleged that Accenture engaged in a deceptive act.

Nor was Accenture's alleged conduct "unfair." The Amended Omnibus Complaint asserts that Accenture's alleged conduct was unfair because in "exercising discretion at the enforcement chokepoint," it recommended terminating Plaintiff's account while not excluding other "users flagged under the same enforcement family during the same general period," which harmed Plaintiff. *Id.* ¶ 149–50. Plaintiff runs into the same problem though. Because Plaintiff does not allege the content of his own Facebook account, he has not affirmatively alleged that his account complied with Meta's CSE policy, which included a range of community standards. Nor can he sufficiently allege that his termination was unfair compared to other users without explaining how his own content compared to that of other users. Plaintiff does not allege how Accenture, as Meta's alleged content moderator, engaged in conduct that was likely to mislead customers or was otherwise immoral, and the Court should therefore dismiss Plaintiff's FDUTPA claim against Accenture.

## CONCLUSION

The Court should dismiss Plaintiff's claims against Accenture with prejudice.

Dated: April 16, 2026

Respectfully submitted,

/s/ *Marianna C. Chapleau*
Marianna C. Chapleau
*LEAD COUNSEL*
Florida Bar No. 1059142
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131
Telephone: 305 432-5687
Fax: 305 432-5601
mchapleau@kirkland.com

Devin S. Anderson (*pro hac vice*)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: 801 877 8115
Fax: 801 877 8101
devin.anderson@kirkland.com

*Counsel for Defendant Accenture LLP*

25

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendant Accenture LLP certifies that counsel conferred with Plaintiff via email, and Plaintiff opposes the relief requested in this motion.

*/s/ Marianna Chapleau*
Marianna Chapleau

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve Notice of Filing on all counsel of record.  I also certify that I caused a true and correct copy of this motion to dismiss to be served via FedEx to Plaintiff at the address below:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy.
#82
Kissimmee, FL 34747
jayballentine@protonmail.com

/s/ *Marianna Chapleau*
Marianna Chapleau

27