## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. BALLENTINE,

Plaintiff,

v.

META PLATFORMS, INC.;
ACCENTURE LLP; TASKUS, INC.;
GENPACT USA, INC; DEVIN S.
ANDERSON; KIRKLAND & ELLIS
LLP; and
CHRISTOPHER W. KEEGAN,

Defendants.

CASE   NO.   5:26-cv-00213-AGM-PRL

Judge Anne-Leigh Gaylord Moe

### DEFENDANTS DEVIN ANDERSON AND CHRISTOPHER KEEGAN'S MOTION TO DISMISS ALL CLAIMS AGAINST THEM

Defendants Devin Anderson and Christopher Keegan move to dismiss with prejudice all claims asserted against them in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### INTRODUCTION

Plaintiff Marvelle J. Ballentine ("Plaintiff") brings the same claims against Defendants Devin Anderson ("Anderson") and Christopher Keegan ("Keegan") (and collectively, "Defendants") in this lawsuit as he did in a parallel lawsuit that was filed first in this Court. *See Ballentine v. Accenture LLP et al*, 6:26-cv-00286-AGM-DCI ("First Federal Action"). Plaintiff alleges that Defendants—both acting as counsel for

Accenture LLP ("Accenture")—committed torts against him by making allegedly defamatory statements in Accenture's motion to dismiss filed with a court in California; by quoting those statements in a later notice of removal; by requiring Plaintiff to communicate with Anderson as a notice attorney for Accenture regarding the California action; and by filing a notice of removal in this Court instead of agreeing to "pause" litigation. As Plaintiff acknowledges, these alleged actions taken by Accenture's counsel constitute "a single escalating course of conduct" that is also the subject of two other lawsuits Plaintiff previously filed in this Court. FAC ¶ 132. As such, this Court has three independent bases to dismiss Plaintiff's claims against Defendants: (1) the claims should be dismissed pursuant to the claim-splitting doctrine; (2) the claims are barred by Florida's litigation privilege; and (3) the Amended Complaint fails to state a claim as a matter of law. This Court should dismiss all of Plaintiff's claims against Defendants with prejudice.

## BACKGROUND

### I.    Plaintiff Sues Meta and Accenture in California for Discrimination.

Last fall, Plaintiff sued Accenture and Meta Platforms, Inc. ("Meta") in the U.S. District Court for the Northern District of California. *See Ballentine v. Meta Platforms, Inc., et al.*, Case No. 3:25-cv-07671-CRB (N.D. Cal. Sept. 9, 2025) (the "California Lawsuit"); FAC ¶ 64.[1] Anderson and Keegan from the law firm, Kirkland & Ellis

---

[1]    The Court may properly consider the complaint and motions to dismiss filed in the California Lawsuit, as well as the email communications with Anderson and Keegan described in the Amended Complaint, without converting this motion into a motion for summary judgment. "[T]he Eleventh Circuit has crafted a limited exception to the conversion rule when the attached documents are central to the claim being considered and are undisputed." *Braxton Techs., LLC v.*

LLP ("Kirkland"), represented Accenture as legal counsel in the California Lawsuit, and Plaintiff was *pro se*. FAC ¶ 68. The California Complaint asserted four discrimination-related claims against Accenture and Meta. Complaint, *Ballentine v. Meta Platforms, Inc., et al.*, Case No. 3:25-cv-07671-CRB (N.D. Cal. Sept. 9, 2025), Dkt. No. 1 ¶¶ 94–161 (the "California Complaint" or "Cal. Compl.").

Plaintiff alleged in the California Complaint that Meta terminated his Facebook advertising account "under its 'Child Sexual Exploitation' [("CSE")] policy." *Id.* ¶¶ 2, 52, 53. Meta actively screens for materials that specifically violate its CSE policy, which prohibits unlawful CSE as well as a range of content that violates community standards related to content involving children. *See* Meta's Motion to Dismiss, *Ballentine v. Meta Platforms, Inc.*, Case No. 3:25-cv-07671-CRB (N.D. Cal. Oct. 31, 2025), Dkt. No. 41 at 1–2. Plaintiff asserted that Meta terminated his Facebook account because of his race and not because of a CSE violation, Cal. Compl. ¶2, and that Accenture assisted by reviewing his account, *id.* ¶ 4. The California Complaint does not say what the content of Plaintiff's Facebook account was, and, even though Plaintiff alleges that he did not violate CSE laws, the California Complaint does not allege that Plaintiff's account otherwise complied with all Meta's CSE policy. *See generally id.*

---

*Ernandes*, 2010 WL 11623673, at *3 (M.D. Fla. Apr. 22, 2010) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). "A document is 'undisputed' when its authenticity is not challenged," and when it is "repeatedly referenced and [its] existence is a necessary part of [a party]'s case." *Id.* Here, these documents contain the statements Plaintiff alleges provide the bases for his claims, and Plaintiff repeatedly references them throughout the Complaint. Accordingly, the Court may consider these exhibits in ruling on this motion to dismiss. *See id.*

**II.    Accenture Moves to Dismiss the California Complaint for Failure to State a Claim.**

Accenture moved to dismiss the California Action.  In the section titled "Background," Accenture's motion recounted the allegations in the California Complaint, including that, "[a]fter Accenture's review, Meta terminated Ballentine's account under its CSE policy."  Accenture's Motion to Dismiss, *Ballentine v. Meta Platforms, Inc.*, Case No. 3:25-cv-07671-CRB (N.D. Cal. Oct. 16, 2025), Dkt. No. 33 at 2–3.  The motion also recited the legal standard for a dismissal motion pursuant to Federal Rule of Civil Procedure 12(b)(6): "Accenture accepts as true the factual allegations in the Complaint solely for the purposes of this motion to dismiss; Accenture does not otherwise concede the truth of any of those allegations." *See id.* at 2 n.2.  The motion to dismiss then described the numerous bases warranting dismissal.

Of relevance here, the motion explained that each claim Plaintiff asserted against Accenture required a showing of racial animus. *See id.* at 7.  To make this showing, the California Complaint had to plausibly allege that, "but for" racial discrimination, Plaintiff's account would not have been terminated. *See id.* at 10–11 (citing *Astre v. McQuaid,* 804 F. App'x 665, 667 (9th Cir. 2020) (affirming dismissal of a discrimination claim because the "allegations do not give rise to a plausible inference that [defendant's] alleged racially discriminatory actions caused the alleged impairment" given that "the 'complaint identifies independent non-discriminatory reasons for' the alleged impairment")).  The motion argued that the California Complaint failed to allege racial animus because the California Complaint was silent

on whether there were independent, *non-discriminatory* reasons for the account termination. Because the California Complaint did not allege that Plaintiff's account complied with all the community standards covered by Meta's CSE policy, the motion to dismiss argued: "An alternative explanation for Accenture's recommendation—a legitimate community standards violation by Ballentine—is consistent with the facts alleged in the complaint." *Id.* at 11.

One day after Accenture filed its motion to dismiss, Plaintiff amended his complaint. A week later, Plaintiff emailed Anderson and Keegan to request that "Accenture consider including a footnote in its forthcoming motion [to dismiss the amended complaint] clarifying that it does not contend Plaintiff violated any child protection laws." Ex. 1 (Oct. 24, 2025 email from J. Ballentine). In response, Anderson explained that Accenture disagreed with Plaintiff's "characterization" of Accenture's first motion to dismiss: "We do not think that the motion suggested— explicitly or implicitly—that there was an actual violation of child protection laws." *See* Ex. 2 (Oct. 28, 2025 email from D. Anderson). Anderson conveyed, nonetheless, that in "Accenture's forthcoming motion to dismiss, and as a courtesy, we will include language reinforcing this point." *Id.* Accenture then filed its motion to dismiss the amended complaint, clarifying that the California Complaint did not deny that there was a "legitimate violation of *another* community standard" that was *not* unlawful CSE. Accenture's Motion to Dismiss Amended Complaint, *Ballentine v. Meta Platforms, Inc.*, Case No. 3:25-cv-07671-CRB (N.D. Cal. Oct. 31, 2025), Dkt. No. 40 at 10 (emphasis added).

### III.    Plaintiff Sues Defendants in Florida Federal Court.

On February 9, 2026, Plaintiff sued Meta, Accenture, Kirkland, and Anderson in Florida federal court, asserting three tort claims arising from Accenture's motion to dismiss the California Complaint:  defamation (libel), civil conspiracy to defame, and intentional infliction of emotional distress ("IIED").  *Ballentine v. Accenture LLP et al.*, Case No. 6:26-cv-00286-AGM-DCI (M.D. Fla. Feb. 9, 2026) ("First Federal Action"). As Plaintiff stated, "[t]his action arises from defamatory statements published by Accenture LLP, through its counsel Devin S. Anderson of Kirkland & Ellis LLP, in federal court filings…."  Complaint, *Ballentine v. Accenture LLP et al.*, Case No. 6:26-cv-00286-AGM-DCI (M.D. Fla. Feb. 9, 2026), Dkt. No. 1 ¶ 1.

Two days later, Plaintiff amended the complaint, adding Keegan as a defendant.  Amended Complaint, *Ballentine v. Accenture LLP et al.*, Case No. 6:26-cv-00286-AGM-DCI (M.D. Fla. Feb. 11, 2026), Dkt. No. 4.  Plaintiff asserted claims of IIED and civil conspiracy against Keegan based on statements made by Keegan on behalf of Accenture in email communications to Plaintiff during the course of the California Action.  *See id*.  Plaintiff later amended the complaint a second time, voluntarily dismissing Accenture and Kirkland as defendants after this Court, *sua sponte*, entered an Order to Show Cause why Plaintiff's complaint should not be dismissed for lack of diversity jurisdiction.  *See* Order, *Ballentine v. Accenture LLP et al.*, Case No. 6:26-cv-00286-AGM-DCI (M.D. Fla. Feb. 18, 2026), Dkt. No. 11 at 2 (explaining that Plaintiff had "not properly alleged the citizenship of Accenture or

Kirkland"); Second Amended Complaint, *Ballentine v. Accenture LLP et al.*, Case No. 6:26-cv-00286-AGM-DCI (M.D. Fla. Feb. 18, 2026), Dkt. No. 20.

### IV.   Plaintiff Abandons His California Lawsuit and Refiles Discrimination Claims in Florida Federal Court.

Before the California court could rule on Accenture's and Meta's motions to dismiss, Plaintiff voluntarily dismissed the California Action and refiled the same claims in a new discrimination action in this Court.  Complaint, *Ballentine v. Meta Platforms, Inc. et al.*, Case No. 6:26-cv-00376-AGM-DCI (M.D. Fla. Feb. 17, 2026) ("Federal Discrimination Complaint").   The Federal Discrimination Complaint asserted the same claims as the California Action arising from the same conduct.  The only difference is that Plaintiff dropped the California law claim related to unfair competition, and Plaintiff added two other "vendor defendants"—TaskUs, Inc. ("TaskUs") and Genpact USA, Inc. ("Genpact").

### V.   Plaintiff Sues Defendants Again in Florida State Court Based on the Same Alleged Conduct.

On March 2, 2026, Plaintiff initiated this action by filing an "omnibus" complaint against all the defendants he previously sued in federal court for all the same claims or state-court equivalents. *See Ballentine v. Meta Platforms, Inc., et al.*, Case No. 35-2026-CA-000494 (Fla. 5th Cir. Ct. Mar. 2, 2026).  Accenture filed a notice of removal consistent with 28 U.S.C. § 1446, Dkt. No. 1, and the case was removed to the Middle District of Florida, Ocala Division and assigned to United States District Judge Pratt on March 25, 2026,  Dkt. No. 5.  Plaintiff subsequently consented to the removal.  Dkt. No. 10.  Defendants moved to dismiss the claims against them, Dkt.

No. 24, and the next day Plaintiff amended his complaint, Dkt. No. 32 ("Amended Complaint" or "FAC").

The remaining claims in the Amended Complaint against Defendants are: defamation (Anderson) and IIED (Anderson and Keegan). These claims mirror the claims Plaintiffs brought against Defendants in the First Federal Action. *Compare* FAC ¶¶ 114–44 *with* Second Am. Fed. Compl. ¶¶ 73–82, 96–106.

The Amended Complaint alleges that Anderson defamed Plaintiff in two different ways. *First*, Plaintiff alleges that Accenture's motion to dismiss the California Complaint defamed him by stating in part that "a legitimate community standards violation by Ballentine—is consistent with the facts," which "conveyed a defamatory meaning." FAC ¶ 138. Plaintiff alleges that Anderson "republished" this defamation by quoting the same statement in Accenture's notice of removal. *Id.* ¶ 127. *Second*, Plaintiff alleges that Accenture's motion to dismiss defamed him by implication when it "identified Plaintiff by name" and used the phrase "Child Sexual Exploitation" or "CSE" twenty-six times in the motion, which allegedly "conveyed to readers that Plaintiff engaged in a CSE violation or child-protection-law violation warranting enforcement action." *Id.* ¶¶ 97, 139. Plaintiff admits throughout the complaint that the "publishing" of the alleged defamatory statements occurred on the "public federal docket" as a part of ongoing litigation. *Id.* ¶¶ 3, 23, 78, 94, 96, 107, 113.

Plaintiff also asserts a claim for IIED against Anderson and Keegan based on actions they took as counsel for Accenture as part of litigation. *Id.* ¶¶ 114–44. Plaintiff alleges that the same statements made in Accenture's motion to dismiss the California

8

Action were "republished" in Accenture's notice of removal in this case and caused him emotional distress. *Id.* ¶¶ 127–133. Plaintiff also alleges that "Accenture, through Anderson" filed the notice of removal "on the same day Plaintiff offered to pause all litigation" and Anderson "refused to correct the record" (*i.e*, strike the quotation of the alleged defamatory statements) after Plaintiff consented to the removal. *Id.* ¶ 133.

As for Keegan, Plaintiff points to two emails Keegan sent to Plaintiff regarding the California Lawsuit. *Id.* ¶¶ 98–104, 122–26. In the first email, Keegan informed Plaintiff that Anderson should be included in email communications regarding Accenture's defense of the California Lawsuit after Plaintiff did not include Anderson on case correspondence:

> On Tuesday, February 10th, 2026 at 11:28 AM, Keegan, Christopher
> <chris.keegan@kirkland.com> wrote:
>
>> Mr. Ballentine, Mr. Anderson continues to represent Accenture in
>> these proceedings and you should continue to direct all
>> communications to both Mr. Anderson and myself on behalf of
>> Accenture. I have added him to this discussion.
>>
>> Chris
>>
>> Christopher W. Keegan, P.C.
>>
>> KIRKLAND & ELLIS LLP
>> 555 California Street, San Francisco, CA 94104
>> T +1 415 439 1882  M +1 415 238 6821
>> F +1 415 439 1500
>>
>> chris.keegan@kirkland.com

Plaintiff responded by removing Anderson from the email chain and stating that he did not want to include Anderson because he is "a co-defendant" in this action:

From: Jay Ballentine <jayballentine@protonmail.com>
Sent: Tuesday, February 10, 2026 11:16 AM
To: Keegan, Christopher <chris.keegan@kirkland.com>
Cc: Visser, Michelle <mvisser@orrick.com>; Davis, Sarah <sdavis@orrick.com>
Subject: RE: Ballentine v. Meta Platforms, Inc. et al., No. 3:25-cv-07671-CRB – Proposed Stipulation to Continue Rule 12 Hearing

Mr. Keegan,

Thank you for your note. As a procedural matter, I do not intend to maintain direct communications with any named defendant in the Florida action.

The current representation structure, where Kirkland & Ellis LLP is a named defendant, Mr. Anderson is both a partner and a co-defendant, and both continue to represent co-defendant Accenture LLP, raises difficult boundary questions. At present, I will maintain communications with you alone in your capacity as counsel for Accenture, and reserve all procedural rights as this posture develops.

Best regards,

Marvelle J. "Jay" Ballentine

Plaintiff, pro se

Keegan responded by asking that Anderson be included in communications about the California Lawsuit because Anderson was a notice attorney for Accenture:

On Tuesday, February 10th, 2026 at 12:17 PM, Keegan, Christopher <chris.keegan@kirkland.com> wrote:

Mr. Ballentine –

Notice attorneys include Mr. Anderson and myself, so please continue to include him on communications.

Chris

**Christopher W. Keegan, P.C.**

**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
T +1 415 439 1882  M +1 415 238 6821
F +1 415 439 1500

chris.keegan@kirkland.com

Keegan had no other communications directly with Plaintiff. Based on these two emails, Plaintiff asserts that "Keegan's conduct…was extreme and outrageous" and "caused Plaintiff additional severe emotional distress." *Id.* ¶ 125.

Plaintiff asserts that all of Defendants' alleged actions "constitute a single escalating course of conduct," beginning with Meta's alleged discriminatory acts taken against him. *Id.* ¶ 132. Plaintiff seeks compensatory damages in the amount of $250 million, attorney's fees, and costs. *Id.* at 36.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the allegations are more conclusory than factual, the court need not assume their truth. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Courts will dismiss a complaint where a plaintiff provides only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A plaintiff must make factual allegations that "raise a right to relief above the speculative level," *id.*, and cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Although "[p]leadings from *pro se* litigants are held to a less stringent standard than pleadings drafted by attorneys," such pleadings still must meet the minimum pleading standards. *Thomas v. Hillsborough Cnty. Sheriff's Off.*, 2021 WL 3930511, at *2 (M.D. Fla. Sept. 2, 2021) (citing *Pugh v. Farmers Home Admin.*, 846 F. Supp. 60, 61 (M.D. Fla. 1994)).

## ARGUMENT

### I.    The Claims Splitting Doctrine Bars Plaintiff's Claims Against Defendants.

By filing an "omnibus" complaint, combining all of Plaintiff's previously filed claims against the same group of defendants, Plaintiff has engaged in improper claim splitting. The rule against claim splitting "requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021). This ensures parties do not "waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases" by "spreading claims around in multiple lawsuits in other courts or before other judges." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). A defendant may raise the issue of claim splitting when "a second suit has been filed before the first suit has reached a final judgment," *id.* at 840, n.3, and a district court may resolve the issue of claim-splitting "at the pleading stage where the defense appears on the face of the plaintiff's complaint and the court is in possession of any judicially noticeable facts it needs to reach a decision," *Loc. Access, LLC v. Kelley Drye & Warren LLP*, 2023 WL 5830419, at *2 (M.D. Fla. Sept. 8, 2023) (citation omitted). There is no doubt from the face of the complaint that Plaintiff asserts the exact same claims against the exact same Defendants here as he did in the First Federal Action, and this Court should dismiss his claims for improper claim splitting.

To determine whether a party has engaged in improper claim splitting, courts apply "a two-factor test": "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of

transactions." *Vanover*, 857 F.3d at 841–42 (11th Cir. 2017) (citation omitted). Plaintiff's claims in the instant action easily meet this test.

*First*, Defendants are the same defendants in both lawsuits, which satisfies the first prong. *Santo v. Aerostar Training Servs., LLC*, 2024 WL 6984159, at *4 (M.D. Fla. Oct. 8, 2024) ("Defendants … all are involved in both lawsuits, and all are bound by the outcome of both cases. The first prong is therefore satisfied.").

*Second*, Plaintiff's claims arise from the same transaction or series of transactions as Plaintiff's claims against Defendants in the First Federal Action. Under this prong, "a new action will be permitted only where it raises new and independent claims, not part of the previous transaction …." *Kennedy*, 998 F.3d at 1236 (citation omitted). The relevant question is "whether the first suit, assuming it were final, would preclude the second suit." *Vanover*, 857 F.3d at 841 (citation omitted). Here, the answer is "yes." Plaintiff asserts (1) a defamation claim against Anderson based on statements in Accenture's motion to dismiss that were also requoted in Accenture's notice of removal in this case; (2) an IIED claim against Anderson for making the allegedly defamatory statements as well as for filing the notice of removal in the instant action, instead of agreeing to "pause" the litigation; and (3) an IIED claim against Keegan based on his two emails to Plaintiff in the California action. These are the same claims asserted in the First Federal Action. The only difference is that Plaintiff has compounded his claims, in circular fashion, by alleging that Anderson continues to defame him by quoting the same statements in new pleadings and that Anderson continues to cause him IIED by defending the claims Plaintiff has asserted against

13

him.  But the Amended Complaint itself acknowledges that these actions, along with the allegations in First Federal Action, constitute "a single escalating course of conduct."  FAC ¶ 132.  All the allegations in the Amended Complaint against Defendants thus arise from "the same nucleus of operative facts" as the First Federal Action, and thus the claim-splitting doctrine bars the instant claims.  *Kennedy*, 998 F.3d at 1236; *Vanover*, 857 F.3d at 841 ("[A] plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.'" (citation omitted)).

Because Plaintiff has engaged in improper claim splitting, his claims against Defendants in this lawsuit should be dismissed with prejudice.  *See id.* at 836 (upholding the dismissal of a duplicative action under the doctrine of claim splitting after the complaint was successfully removed from Florida state court); *see also Kent-Stevens v. CHS Emp. Grp. LLC*, 2025 WL 50318, at *2 (M.D. Fla. Jan. 8, 2025) ("The typical remedy for claim-splitting is a dismissal of the second action with prejudice.").

## II.    The Litigation Privilege Bars Plaintiff's Claims Against Defendants.

Plaintiff's claims should also be dismissed because they arise from statements that are protected by Florida's litigation privilege.  When "the conduct in question is inherently related to, and occurs during an ongoing judicial proceeding, under Florida law, that conduct must be protected so that participants in a lawsuit are unhindered in exercising their judgment as to the best way to prosecute or defend the lawsuit." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004).  "The litigation

14

privilege in Florida provides all persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for acts taken in relation to those proceedings." *Cherdak v. Cottone*, 2023 WL 2044608, at *4 (M.D. Fla. Feb. 16, 2023) (footnote omitted) (citation omitted). Litigation privilege is an affirmative defense that "may be considered in resolving a motion to dismiss when 'the complaint affirmatively and clearly shows the conclusive applicability' of the defense to bar the action." *Jackson*, 372 F.3d at 1277 (quoting *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988)). Here, the complaint affirmatively and clearly shows that (1) the conduct at issue is protected by the litigation privilege, and (2) the litigation privilege applies to both types of claims asserted by Plaintiff.

### A. The Litigation Privilege Extends to Statements Made in Court Filings and Related Litigation Conduct by Attorneys.

The face of the complaint clearly shows that Plaintiff's claims arise from litigation-related actions taken in the California Lawsuit and in the instant action. Under Florida law, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . ***so long as the act has some relation to the proceeding***" because "participants in litigation must be free to engage in unhindered communication" and "to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *Id.* at 1274 (emphasis added) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.,* 639 So.2d 606, 608 (Fla. 1994)).

Here, the litigation privilege protects both Anderson's and Keegan's conduct from liability.  First, Plaintiff alleges that Anderson made defamatory statements in Accenture's motion to dismiss when Accenture argued that the California Complaint did not state a claim for racial discrimination.  Plaintiff also alleges that Anderson further defamed him by quoting these statements in Accenture's notice of removal, describing Plaintiff's defamation claims.  Because all these statements were made in pleadings filed with a judicial court, they clearly fall within the litigation privilege.  *See e.g.*, *Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1313 (M.D. Fla. 2025) (determining that Florida's litigation privilege applies when the "defamatory statements at issue were made either in front of a judicial officer or in pleadings or documents filed with the court" (citation omitted)).

Plaintiff also alleges IIED against Anderson and Keegan for actions they took as counsel for Accenture.  Specifically, Plaintiff claims that Anderson caused him IIED by filing a notice of removal on behalf of Accenture instead of agreeing to "pause" the litigation here, and Keegan allegedly caused Plaintiff IIED by adding Anderson to email correspondence with Plaintiff in the California Lawsuit.  Florida's litigation privilege bars these claims because Defendants' actions directly related to judicial proceedings.  *See Cherdak*, 2023 WL 2044608, at *5 (finding that email correspondence from counsel to a *pro se* litigant "clearly trigger[ed] the litigation privilege"); *Jackson*, 372 F.3d at 1276 ("[E]vents taking place outside the courtroom during discovery or settlement discussions are no less an integral part of the judicial process, and thus deserving of the protection of the [litigation] privilege, than in-court proceedings."

16

(citation omitted)).  There can be no doubt that the litigation privilege extends to all the alleged conduct by both Defendants at issue here.

## B.    The Litigation Privilege Applies to All Tort Claims Asserted.

The litigation privilege also clearly applies to all of Plaintiff's tort claims.  Courts have applied the privilege "to any tort or statutory cause of action based on false statements or other wrongful conduct." *Emergency Recovery, Inc.*, 773 F. Supp. 3d at 1312 (quoting *AGM Invs., LLC v. Bus. L. Grp., P.A.*, 219 So. 3d 920, 924 (Fla. 2d DCA 2017)).  As relevant to Plaintiff's claims, alleged defamatory statements made in court filings are "categorically immune from liability under the litigation privilege doctrine." *United States v. Madison*, 812 F. Supp. 3d 1233, 1249 (M.D. Fla. 2025).  Courts have also applied the privilege to bar claims of IIED.  *E.g.*, *Cherdak*, 2023 WL 2044608, at *6 ("Litigation privilege immunizes acts done (or statements made) in connection with litigation from tort suits); *Medina Wright Berry Medina Wright v. Medina*, 2013 WL 12156046, at *7 (M.D. Fla. July 12, 2013) (dismissing claim for IIED on the basis that "the assertion of intentional infliction of emotional distress cannot be used to circumvent the immunity afforded to litigation conduct").  Accordingly, Florida's litigation privilege disposes of all of Plaintiff's claims against Defendants, and they should be dismissed with prejudice as a result.  *See also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So.2d 380, 384 (Fla. 2007) ("The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin.").

17

**III.    Independently, the Court should Dismiss the Claims Against Defendants for Failure to State a Claim.**

**A.    Plaintiff Does Not Sufficiently Allege Defamation Against Anderson.**

In addition to being protected by the litigation privilege, Anderson's statements are not false and not defamatory.  "To state a claim of defamation, the plaintiff must allege that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Grayson v. No Labels, Inc.*, 599 F. Supp. 3d 1184, 1188 (M.D. Fla. 2022) (citation omitted).  "A false statement of fact is the *sine qua non* for recovery in a defamation action."  *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984) (citation omitted).  "Where the court finds that 'a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action.'"  *Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) (footnote omitted).

Plaintiff fails to identify a statement that is false or defamatory.  Accenture's motion to dismiss assessed—as all motions to dismiss must do—the allegations that Plaintiff set forth in his California Complaint and then argued that they were deficient.  Specifically, Accenture's motion pointed out that ***the California Complaint failed to allege*** that Plaintiff's account complied with all Meta community standards, thereby leaving open the possibility that it did not.  That is a completely normal argument in a motion to dismiss and is a true statement about the California Complaint or, at most, an opinion about the public complaint that is "not actionable in a defamation suit."

18

*Turner v. Wells*, 879 F.3d 1254, 1262–64 (11th Cir. 2018) ("Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." (citation omitted)). Importantly, the complaint never alleges that this statement in Accenture's motion to dismiss is false. Nor does the complaint allege that Accenture's statement in its notice of removal filed in this Court, quoting what the California motion to dismiss said, is an inaccurate quotation or otherwise false.

In addition, Plaintiff fails to identify statements that are harmful to Plaintiff. The motion's characterization of the California Complaint describes what the California Complaint said (or did not say)—not what Plaintiff actually did with respect to his Facebook advertising account. There is no reasonable defamatory interpretation of these statements in the context of a motion to dismiss filed as part of judicial proceedings to dismiss a complaint as a matter of law. *See Hallmark Builders*, 733 F.2d at 1464 (dismissing defamation claims after finding that the alleged defamatory statements are "not susceptible to a defamatory interpretation"). Nor is there a reasonable defamatory interpretation of Accenture's notice of removal that quoted the statements from the California motion to describe the claims asserted against it.

Plaintiff also tries to make a defamation by implication claim, asserting that all the references in the motion to dismiss to "CSE" and CSE-related terminology in proximity to his name "conveyed to readers that Plaintiff engaged in a CSE violation or child-protection-law violation warranting enforcement action." FAC ¶ 139.

19

Whether a statement is defamatory by implication "turns on whether the 'gist' of the publication is false." *Turner*, 879 F.3d at 1269 (citation omitted). "In making this determination, [the factfinder] should consider the context in which the statement is made." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1107 (Fla. 2008). The context of the motion to dismiss makes crystal clear that it is responding to the allegations that Plaintiff himself made in the California Complaint. Indeed, Plaintiff himself referenced CSE and CSE-related terminology ***more than seventy times*** in his own California Complaint. *See generally* Cal. Compl. It is not defamatory—whether by implication or otherwise—for a motion to dismiss a complaint that mentions Plaintiff and CSE more than seventy times to also reference Plaintiff and CSE in the course of arguing that the California Complaint did not sufficiently state a claim for racial discrimination. These statements "could not possibly have a defamatory or harmful effect." *Rubin*, 271 F.3d at 1306.

Because Plaintiff has not sufficiently alleged that Anderson's alleged statements were false and defamatory, the Court should dismiss Plaintiff's defamation claim.

B.    **Plaintiff Does Not Sufficiently Allege Intentional Infliction of Emotional Distress.**

Plaintiff's claim for IIED should also be dismissed because he does not sufficiently allege that Defendants engaged in "extreme and outrageous conduct," an essential element of a claim for IIED. *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012). Under Florida law, "[c]onduct is considered 'outrageous' when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1296 (M.D. Fla. 2006) (quoting *Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 278–79 (Fla. 1985)). Therefore, liability for IIED "does not extend to mere insults, indignities, threats or false accusations"—not even to "viscous verbal attacks." *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (holding that conduct was not outrageous even though plaintiff was called racially derogatory terms at the workplace, was made to work in dangerous conditions, and was subject to false disciplinary actions and threats that he would be fired); *Lay v. Roux Lab'ys, Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (holding that conduct was not outrageous even though plaintiff was subject to "humiliating language, vicious verbal attacks, [and] racial epithets"). Nothing alleged in the complaint comes remotely close to meeting this standard.

Plaintiff alleges an IIED claim against Anderson based on the statements in the motion to dismiss and quoted in the notice of removal. These statements alone do not meet the "extremely high standard" imposed by Florida law for "extreme and outrageous" conduct. *See Lopez*, 676 F.3d at 1236–37 (explaining that Florida courts generally do not find IIED "based solely on allegations of verbal abuse" (citation omitted)). Furthermore, Florida's single action rule independently bars Plaintiff's IIED claim against Anderson because the claim is based on the same statements that are also the subject of Plaintiff's defamation claim against Anderson. *See Cherdak*, 2023 WL 2044608, at *6 ("[E]ven in the absence of litigation privilege, [plaintiff's]

intentional infliction of emotional distress claim would still be improper because it is merely a restatement of his defamation claim." (citation omitted)); *Patterson v. Meredith Corp.*, 2018 WL 11649577, at *2 (M.D. Fla. Nov. 9, 2018) ("[T]he IIED claims cannot continue because they are based on the same alleged defamation, thus running afoul of Florida's single action rule.").

Plaintiff's assertion that Anderson's and Keegan's litigation conduct was "extreme and outrageous" also fails. Plaintiff alleges that Anderson filed Accenture's notice of removal "on the same day Plaintiff offered to pause all litigation" and "refused" to strike the alleged defamation from the notice. FAC ¶¶ 131, 133. Meanwhile, Keegan's alleged actions boil down to "twice add[ing] Anderson to email communications with Plaintiff … with knowledge that Anderson is alleged to have caused Plaintiff severe emotional distress." *Id.* ¶¶ 123–24. These allegations of normal litigation practices to remove cases to federal court and to maintain communication between counsel of record and a *pro se* plaintiff do not rise to the level of a well-pleaded IIED claim. Plaintiff does not allege verbal abuse, let alone verbal abuse combined with physical abuse. Rather, the benign actions Anderson and Keegan took were standard litigation actions taken by attorneys during the course of pending litigation proceedings—and "did not involve any obscenities, racial epithets, or threats of violence." *Lopez*, 676 F.3d. at 1237. Andersons's and Keegan's alleged conduct cannot be characterized as "extreme" or "outrageous," and it certainly is not sufficiently extreme and outrageous to Florida's extremely high standard. *See id.* at 1236; *see also Martinez*, 422 F. Supp. 2d at 1296–97 (dismissing a claim for IIED even

22

though employees of the defendant company "repeatedly used racial slurs and delayed and inconvenienced [plaintiffs] while they delivered materials to the [defendant company]"). At bottom, the complaint fails to state a claim for IIED against Defendants.

## IV. The Claims Against Defendants Should Be Dismissed with Prejudice.

This Court should deny Plaintiff leave to amend because it would be futile. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1213 (11th Cir. 2001) ("'[I]f a more carefully drafted complaint could not state a claim …, dismissal with prejudice is proper.'"). Because both the claim-splitting doctrine and Florida's litigation privilege absolutely bar liability for Defendants' alleged conduct here, even if given the opportunity to amend his allegations, Plaintiff "could not state a viable claim." *Cherdak*, 2023 WL 2044608, at *8; *see also Arthur-Rodger v. N. Tr. Co.*, 2025 WL 3620274, at *5 (M.D. Fla. Jan. 28, 2025) (dismissing complaint with prejudice because the litigation privileged covered the alleged behavior at issue).

Furthermore, given Plaintiff's history of asserting frivolous claims against Defendants as well as against Defendants' client and law firm, dismissal with prejudice is particularly warranted here. *Brett v. Biden*, 2022 WL 5213317, at *2 (N.D. Fla. Sept. 1, 2022) ("Plaintiff's long and extensive history of asserting frivolous claims further indicates that Plaintiff is asserting frivolous claims in this civil action and that the appropriate action is dismissal with prejudice."), *report and recommendation adopted*, 2022 WL 5213029 (N.D. Fla. Oct. 5, 2022). Claims are considered frivolous if they are "without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349

23

(11th Cir. 2001).  Plaintiff's claims, which attack the very legal advocacy upon which this Court relies, are the definition of frivolous.  The Court should therefore dismiss the claims against Defendants with prejudice.  *See Raghubir v. United States*, 2021 WL 12163926, at *2 (M.D. Fla. Oct. 20, 2021) ("The frivolous complaint and Plaintiff's numerous previous filings warrant dismissing the complaint with prejudice."), *report and recommendation adopted*, 2021 WL 12163948 (M.D. Fla. Dec. 6, 2021); *Jean-Baptiste v. U.S. Dep't of Just.*, 2024 WL 172753, at *2 (S.D. Fla. Jan. 3, 2024) ("Based upon Plaintiff's fantastical allegations in this Action and his pattern of frivolity in other cases, the Court dismisses this Action with prejudice."), *aff'd*, 2024 WL 4249655 (11th Cir. Sept. 20, 2024).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against Defendants with prejudice.

Dated: April 16, 2026

Respectfully submitted,

By:   /s/ *Marianna Chapleau*

Marianna C. Chapleau
*LEAD COUNSEL*
Florida Bar No. 1059142
Ariel D. Deitchman
Florida Bar No. 118163
Patrick Malone
Florida Bar No. 1051725
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th St., Suite 700
Miami, FL 33131
Tel: (305) 432-5600
Fax: (305) 432-5601
mchapleau@kirkland.com
ariel.deitchman@kirkland.com
patrick.malone@kirkland.com

*Counsel for Defendants Devin S. Anderson and Christopher W. Keegan.*

25

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendants Devin S. Anderson and Christopher W. Keegan certifies that counsel conferred with Plaintiff via email, and Plaintiff opposes the relief requested in this motion.

*/s/ Marianna Chapleau*
Marianna Chapleau

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve Notice of Filing on all counsel of record. I also certify that I caused a true and correct copy of this motion to dismiss to be served via FedEx to Plaintiff at the address below:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy.
#82
Kissimmee, FL 34747
jayballentine@protonmail.com

*/s/ Marianna Chapleau*
Marianna Chapleau

27